IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CYNTHIA PARLIN, Individually, and ) 
in her Capacities as Surviving )
Spouse of Samuel Parlin, And As )
Executrix of the Estate of Samuel )    C.A. No.: 1:08-cv-00107 JJF
Parlin, Deceased, )
 )    TRIAL BY JURY DEMANDED
                          Plaintiffs, )
 )
     v. )
 )
DYNCORP INTERNATIONAL, INC., )
et al., )
 )
                          Defendants. )

## PLAINTIFFS' BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER

Neilli Mullen Walsh (2707)
Ben T. Castle (520)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6618/6603

Attorneys for Plaintiffs

*Of Counsel:*
James E. Beasley, Jr.
Maxwell S. Kennerly
THE BEASLEY FIRM, LLC
1125 Walnut Street
Philadelphia, PA 19107-4997
(215) 592-1000

Dated: March 14, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS............................... 1

SUMMARY OF ARGUMENT .......................................................... 2

STATEMENT OF FACTS ................................................................ 3

ARGUMENT ................................................................................. 5

A.   Standard of Review................................................................ 5

    1.   Motion to Dismiss Standard......................................... 5

    2.   Political Question Doctrine Standard ........................... 6

B.   The Controversy Here Has Been Committed by the Executive, the
    Congress, and the Judiciary to Resolution Through State Tort Law...................... 7

    1.   The Only Policy Established by the Executive Was to Enter Into a
        Contract Making Security the Responsibility of the Defendants ............... 8

    2.   Congress Has Specifically Acted to Recognize Plaintiffs' Tort Rights........ 10

    3.   The Judiciary Specifically Established an Immunity Doctrine for
        Defendants' Arguments, Which Defendant Has Failed to Raise
        Because Defendants Recognize It, Too, Is Inapplicable ............................ 12

C.   Judicially Managable Standards Are Available..................................... 14

D.   Venue is Appropriate in Delaware and Inappropriate in Virginia ........................ 16

    1.   Venue is Appropriate in Delaware ............................................. 16

    2.   Defendants Have Not Shown Justice Weighs Strongly in Favor of
        Transfer to Virginia ................................................................. 17

## **TABLE OF AUTHORITIES**

**Page(s)**

### **Cases**

*Adams v. Crowley*, 2005 U.S. Dist. LEXIS 9885 (D. Del. , May 25, 2005) .....................18

*ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp.2d 565 (D. Del. 2001)...............................17

*Baker v. Carr*, 369 U.S. 186 (1962) ...........................................................................6, 7, 8

*Baragona v. Kuwait Gulf Link Transp. Co.*, 2007 U.S. Dist. LEXIS 81804
(N.D. Ga. Nov. 5, 2007) .....................................................................................................15

*Barker v. Halliburton Co.*, 2008 U.S. Dist. LEXIS 6741 (Jan. 30, 2008) .......................15

*Beaty v. Republic of Iraq*, 480 F. Supp. 2d 60 (D.D.C., Nov. 21, 2007) .....................8, 9

*Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007) .....................................................5

*Boyle v. United Technologies Corp.*, 487 U.S. 500 (1988)...............................................12

*Carley v. Wheeled Coach*, 991 F.2d 1117 (3rd Cir. 1993) .....................................................14

*Cottman Transmission Sys. v. Martino*, 36 F.3d 291 (3d Cir. 1994) ...............................16

*Dammarell v. Islamic Republic of Iran*, 2005 U.S. Dist. LEXIS 5343
(D.D.C. Mar. 29, 2005)........................................................................................................15

*Doe v. Bush*, 323 F.3d 133 (1st Cir. 2003)..........................................................................7

*Gross v. German Foundation Indus. Initiative*, 456 F.3d 363 (3rd Cir.
2006).............................................................................................................................6, 8, 9, 15

*Ibrahim v. Titan Corp.*, 2007 U.S. Dist. LEXIS 81794 (D.D.C. Nov. 6,
2007).............................................................................................................................. 14, 15

*In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973 (D. Del. 1993) .......................18

*In re: Nazi Era Cases*, 196 Fed. Appx. 93 (3rd Cir. 2006)................................................... 6

*Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221 (1986) .........................7, 9, 15

*Jumara v. State Farm Ins. Co.*, 55 F.3d 873 (3rd Cir. 1995) .............................................17

*Khouzam v. Hogan*, 2008 U.S. Dist. LEXIS 2073 (M.D. Pa, Jan. 10, 2008)....................9

*Megill v. Worthington Pump, Inc.*, 1999 U.S. Dist. LEXIS 4433 (D. Del,
March 26, 1999)..................................................................................................................14

*Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237 (3rd Cir. 1987, Sloviter, J.) ............................................................................................................... 12

*Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811 (2001) ........................... 12

*Phillips v. County of Allegheny*, 2008 U.S. App. LEXIS 2513 (3d Cir., Feb. 5, 2008) .................................................................................................................. 5, 14

*Sarei v. Rio Tinto, PLC*, 456 F.3d 1069 (case currently reheard *en banc*) ........................ 9

## **Statutes**

33 U.S.C.S. § 905(a) .............................................................................................................. 12

42 U.S.C.S. § 1651(a)(4) ....................................................................................................... 11

## **Rules**

28 U.S.C. § 1391(a) ........................................................................................................ 1, 2, 16

Federal Rules of Civil Procedure 12(b)(1) ............................................................................ 1

Federal Rules of Civil Procedure 12(b)(3) ............................................................................ 1

DB02:6662594.1                                                                                                          067040.1001

## **NATURE AND STAGE OF THE PROCEEDINGS**

Plaintiff's Complaint, alleging wrongful death, was filed on January 16, 2008 in Delaware state court, in the Superior Court in and for New Castle County. Defendants removed this action to this Court on February 19, 2008, and on February 26, 2008 moved to dismiss this case under Fed. R. Civ. P. 12(b)(1) & (3). Defendants assert under 12(b)(1) this Court lacks subject-matter jurisdiction under the political question doctrine, despite clear statutory authorization for tort claims by subcontractor employees against general contractors with respect to government contracts performed abroad. Defendants assert under 12(b)(3) that no proper venue exists for hearing this controversy between United States citizens, despite the plain meaning of 28 U.S.C. § 1391(a).

No discovery has occurred. In support of their Motion, Defendants have produced no factual materials, not even a copy of the "CIVPOL" contract they claim shields them from all liability, save a single-page declaration for purposes of venue. Further, despite Defendants' raising of a political question defense, the United States has not sought to intervene in any fashion in this litigation. Thus, the only facts properly before the Court are those alleged by Plaintiff's Complaint, which must be accepted as true, with all reasonable inferences made in Plaintiff's favor.

DB02:6662594.1

067040.1001

## SUMMARY OF ARGUMENT

I.    The political question doctrine is inapplicable because all three branches have committed this controversy to resolution through the torts system. The Executive Branch's (Department of State) contract with the Defendants explicitly made Plaintiff-decedent's safety and security the responsibility of the Defendants. The Defense Base Act, enacted by Congress, explicitly preserves the right of subcontractor employees to bring suit against the general contractors with respect to government contracts overseas. The Judiciary has created a specific immunity doctrine with respect to situations like these, the government contractor defense, which Defendants have not even raised because they recognize they do not meet its narrow, precise criteria. Prior courts have heard cases of far deeper foreign policy involvement, including cases interpreting Iraqi tort law, cases ruling upon the conduct of foreign nationals in Iraq, and cases alleging tortuous conduct occurring on military bases in Iraq under the supervision of the U.S. military. The Court can easily manage this controversy between a United States citizen and two United States corporations involving conduct independent of any government supervision or control.

II.    Venue is clear in Delaware on the face of 28 U.S.C. § 1391(a), as all Defendants reside here and are found here. All factors weigh against transfer except the convenience of a multi-billion-dollar corporation with essentially unlimited resources.

DB02:6662594.1                                067040.1001

## STATEMENT OF FACTS

Plaintiff-decedent, Samuel Parlin, died from injuries sustained while employed by a subcontractor with respect to a general contractor that contracted with the United States government to perform civilian work in Iraq. Plaintiff-decedent was a United States citizen and resident of Georgia. Defendants are United States corporations incorporated in Delaware. Plaintiff has already recovered workers compensation provided by Plaintiff-decedent's employer (which is not a party to this action), and now brings suit against the general contractors, pursuant to the Longshore and Harbor Workers Compensation Act, as applied by the Defense Base Act.

Plaintiff-decedent was employed by non-party DynCorp International FZ-LLC, a Dubai company, to serve as an international police liaison officer in Iraq, where he assisted in the training of an indigenous police force. Plaintiff-decedent's employer, in turn, was under contract with Defendants, who in turn were under contract with the Department of State.

Upon information and belief, Defendants will not dispute the above when called to Answer Plaintiff's Complaint.

As alleged by Plaintiff's Complaint, accepted as true here, Defendants' contract with the Department of State included general provisions describing Defendants' responsibility to ensure the safety and security of both their employees and the employees of subcontractors. ¶¶ 6, 13, 14, 15, 16. The contract was a civilian contract of a civilian nature, not a military contract, and Defendants, not the United States military, retained control over their employees and subcontractors. ¶ 18.

Defendants negligently, recklessly, knowingly and/or intentionally undersupplied their employees and subcontractors, sometimes, for example, providing them with dangerous weapons obtained in violation of United States and Iraqi law. ¶¶ 23, 24.

By January 2006, Plaintiff-decedent had completed nearly two (2) years of service abroad, at which point he was scheduled to return home. ¶ 29. Defendants advised Plaintiff-decedent that he was being considered for a different position, and so ordered that he travel from the Baghdad International Airport, where he was stationed, to the Baghdad Hotel, on the other side of Baghdad. ¶¶ 31, 32. Such travel was ordered despite the well-known risk of travel, particularly without military escort, in Baghdad. ¶ 30.

Unbeknownst to Plaintiff-decedent, the position for which he was "interviewing" had already been awarded to another individual. ¶ 35. As such, his travel was entirely unnecessary, in flagrant disregard for his safety and security. ¶ 37. Worse, his travel was performed in an knowingly unsafe manner, with insufficient weaponry, armor, vehicles and other supplies for the travel. ¶ 40.

As a proximate result of the above conduct, Plaintiff-decedent died from wounds sustained after an Improvised Explosive Device was detonated near his vehicle as he traveled through Baghdad. ¶ 38.

## ARGUMENT

### A.   Standard of Review

#### 1.   Motion to Dismiss Standard

The Third Circuit has revisited the motion to dismiss standard in light of *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). In *Phillips v. County of Allegheny*, the Third Circuit reversed the District Court's order granting a motion to dismiss, holding:

> The Supreme Court's <u>Twombly</u> formulation of the pleading standard can be summed up thus: "stating . . . a claim requires a complaint with enough factual matter (taken as true) **to suggest**" the required element. This "does not impose a probability requirement at the pleading stage," but instead "**simply calls for enough facts to raise a reasonable expectation that discovery will reveal evidence** of" the necessary element.

2008 U.S. App. LEXIS 2513 * 20 (3d Cir., February 5, 2008)(emphases added). Plaintiff is under no duty to produce here sufficient evidence to prevail on her claims, or to overcome Defendants' defenses, but rather need provide only "enough facts" to create a reasonable expectation that discovery <u>could</u> reveal sufficient evidence. The Third Circuit in *Phillips* expressly directed District Courts not to engage in "an unduly crabbed reading of the complaint" that "denies [the plaintiff] the inferences to which her complaint is entitled." 2008 U.S. App. LEXIS 2513 * 29. In properly drawing inferences, the question is if "[plaintiff] may well be able to prove facts that would satisfy the [elements of their claim] ..." *Id.*

## 2.    **Political Question Doctrine Standard**

Defendants seek dismissal of Plaintiff's Complaint solely upon application of the political question doctrine.[1] Yet, their Brief misstates the applicable standard of review. *Defendants' Brief, p. 6.* The question is not merely if any of the six "political question" factors are found; "Should a factor be present, a holding of nonjusticiability still **depends** on whether the factor is **inextricable** from the case at bar." *Gross v. German Foundation Indus. Initiative,* 456 F.3d 363, 377-378 (3rd Cir. 2006) (emphasis added, internal citation and quotation to *Baker v. Carr,* 369 U.S. 186 (1962), omitted). Courts are not to blindly apply the political question doctrine to dismiss cases. Rather, "Aware that the 'political question' label can obscure the need for case by case inquiry, we necessarily avoid resolution by any semantic cataloguing. Instead, we undertake a **discriminating** inquiry into the **precise** facts and posture of the particular case." *Id.* (emphases added).

Importantly, Defendants' Brief does not cite a single published opinion in the Third Circuit -- Appellate or District -- actually dismissing a suit by way of the doctrine.[2] Such a paucity of precedent is present across the United States. As the First Circuit noted in rejecting application of the doctrine to a case directly questioning the constitutionality of the 2002 Authorization for Use of Military Force Against Iraq, "In the forty years since [*Baker v. Carr*], the Supreme Court has found a case nonjusticiable

---

[1]    Defendants' venue argument oddly requests both dismissal and transfer; the former request obviously has no foundation in law, and Defendants' cite none. As such, Plaintiff construes Defendants' venue argument as a request for transfer, not dismissal.

[2]    The solitary *unpublished* opinion cited by Defendants, *In re: Nazi Era Cases,* 196 Fed. Appx. 93 (3rd Cir. 2006), is obviously distinguishable, as it involved a Holocaust survivor's suit against two German companies, a claim explicitly governed by the intergovernmental "Remembrance, Responsibility and the Future" Foundation, to which plaintiff had submitted a claim, executed a waiver, and from which he received compensation.

on the basis of the political question doctrine only twice." *Doe v. Bush*, 323 F.3d 133, 140 (1st Cir. 2003) .

**B.    The Controversy Here Has Been Committed by the Executive, the Congress, and the Judiciary to Resolution Through State Tort Law**

Initially, "The political question doctrine excludes from judicial review those controversies which revolve around policy choices and value determinations constitutionally committed for resolution to the halls of Congress or the confines of the Executive Branch." *Japan Whaling Ass'n v. Am. Cetacean Soc'y*, 478 U.S. 221, 230 (1986). The case *sub judice* does not involve any "policy choices" by any branch of government; rather, the case revolves around dangerous and unreasonable conduct by a corporation while carrying out a government contract overseas, a circumstance for which Congress has expressly preserved Plaintiff's tort remedies. *See Section B(2), infra.* Further, to the extent Defendants truly believe this case encroaches upon any decision of the military or government, there is a separate judicially-created doctrine available: the government contractor defense. *See Section B(3), infra.* Yet, Defendants do <u>not</u> raise such defense, because they know they cannot possibly meet its elements.

Defendants' Motion must thus be viewed in its appropriate context, as a long-shot attempt to have this Court apply a rare and narrow doctrine, reserved exclusively for society-wide political policy questions, prior even to the commencement of discovery. Indeed, half of Defendants' Brief is devoted to unsourced, unverified allegations about the CIVPOL contract, yet Defendants have not deigned to provide this Court or Plaintiff a copy of that contract.

1.    **The Only Policy Established by the Executive Was to Enter Into a Contract Making Security the Responsibility of the Defendants**

*Gross*, in rejecting application of the political question doctrine to a suit involving a government-established war reparations fund, reiterated the narrow application of the doctrine and reaffirmed a number of principles counseling against dismissal.    For example, Defendants' Brief describes at length numerous proposed regulations and statutes that, had they been enacted at the time, may have applied to the events in this case. Under *Gross*, such absence of oversight at the relevant time -- and the presence of Congressional intervention to preserve Plaintiff's rights, discussed *infra* -- weighs **against**, not in favor of, dismissal: "The mere existence of the Executive's power to extinguish claims . . ., without an exercise of that power, does not render those claims nonjusticiable by virtue of being committed to a co-equal branch." *Beaty v. Republic of Iraq*, 480 F. Supp. 2d 60, 74 (D.D.C., Nov. 21, 2007)(quoting *Gross*, 456 F.3d at 387, in rejecting doctrine's application to a suit directly against Iraq). Defendants in fact later assert, as suits the moment, that "political efforts to implement more uniform standards for the protection of civilian contractors are only at the beginning stages." *Def. Brief*, p. 20. That is correct: this controversy was then and is now outside the "political" realm and in the private tort realm.

Indeed, *Gross* specifically counsels against the very argument made by the Defendants -- that all suits tangentially related to foreign policy should be dismissed -- even where, unlike here, the case intrudes directly upon the prerogative of the Executive:

> But the [Supreme] Court has cautioned **that not "every case or controversy which touches foreign relations lies beyond judicial cognizance**," *Baker*, 369 U.S. at 211. "[U]nder the Constitution, one of the Judiciary's

8

> characteristic roles is to interpret statutes[, treaties, and executive agreements]," and "we cannot shirk this responsibility merely because our decision may have significant political overtones." *Japan Whaling*, 478 U.S. at 230. Accordingly, a predicted negative impact on foreign relations does not, by itself, render a case nonjusticiable under the political question doctrine.[3]

*Gross*, 456 F.3d at 377 (emphasis added); see also *Khouzam v. Hogan*, 2008 U.S. Dist. LEXIS 2073 * 49 (M.D. Pa, Jan. 10, 2008) ("Furthermore, the fact that this matter implicates the foreign affairs of the United States does not insulate the Executive Branch action from judicial review.").

In contrast, here there is **no** negative impact on foreign relations, as the Plaintiff, a United States citizen, asks merely for the Court to award monetary damages from Defendants, both United States corporations based in Delaware that were operating under contract with the United States. The Court further must accept as true the absence of any foreign policy implications, as the United States itself has **not** sought to dismiss or otherwise intervene in the case. As noted by the District Court for the District of Columbia, "Recent decisions by the Third and Ninth Circuits have found the refusal of the Executive Branch to seek dismissal, when it had the opportunity to do so, significant if not dispositive." *Beaty*, 480 F.Supp. 2d at 63, citing *Sarei v. Rio Tinto, PLC*, 456 F.3d 1069, 1080-82 (case currently reheard *en banc*) and *Gross*, 456 F.3d at 385.

The only cases cited by Defendants actually applying the political question doctrine -- all of which are District Court opinions in other Circuits, not binding on this Court which, Defendants' own research reveals, has <u>never</u> dismissed a case on such grounds -- show the depth of government involvement required. In the case upon which

---

[3] Contrast this language from the Third Circuit with the title of defendants section B(2)(a), which concludes "matters involving foreign policy and military actions are constitutionally committed to the political branches." Plaintiff submits the Third Circuit's view controls over the Defendants'.

9

Defendants most heavily rely, *Smith v. Halliburton*, plaintiff alleged defendant was negligent in securing a dining facility at a Forward Operating Base, at which plaintiff's decedent was killed. The Court ordered limited discovery, after which the Court concluded, "[t]he Army retained the authority and responsibility for the 'security' and 'force protection' functions at FOB Marez and the Marez DFAC at all times under this contract," whereas "defendants' responsibility was to provide food services." *Id*. at * 12.

Here, Plaintiffs' complaint alleges that, under the CIVPOL contract, **in stark contrast to the contract in *Smith***, the security of Plaintiff-decedent was entirely the responsibility of **Defendants**, not the military. *Complaint,* ¶¶ 14, 16, 18.[4] Moreover, also in stark contrast to any of the cases cited by Defendants, Plaintiffs' Complaint also alleges that Defendants knowingly ordered Plaintiff-decedent to travel across Baghdad to "interview" for a position that had already been filled. None of the cases cited by the Defendants allege such intentional, reckless and knowing disregard for the safety of plaintiff or their decedent, an act for which Defendants bear complete responsibility, an act with which no officer of the United States government or military was involved in the slightest. Indeed, the sole act of the Executive here was to make Plaintiff-decendent's safety and security the responsibility of the Defendants.

### 2.    Congress Has Specifically Acted to Recognize Plaintiffs' Tort Rights

Critically, and dispositively, despite the narrow and exceedingly rare applicability of the political question doctrine, Defendants have not made their argument with any

---

[4]    Plaintiff notes here that, despite frequent reference to said contract, Defendants have **not** produced a copy for judicial review; thus, the content of the contract must be accepted by this Court as alleged by Plaintiff, and construed with all reasonable inferences in favor of Plaintiff. Such factual assumptions and inferences are also applied against Defendants' unsourced and unverified assertions that the military controlled any of their conduct.

10

precision whatsoever, have not met their burden to show any of the factors, and certainly have not met their burden to show any of those factors are "inextricable" from the case at bar. Instead, Defendant generally claims immunity because the Executive Branch is involved in "decisions to deploy U.S. CIVPOL" (p. 8), because "the US army commanded all police training in Iraq" (p. 8), because "the State Department approved and executed the CIVPOL contract" (p. 9), because "the U.S. military ... permitted such travel" (p. 9). Such general government and military oversight is true of **any** contract within the parameters of the Defense Base Act, yet in such circumstance Congress has acted specifically to **preserve**, not deny, subcontractor employee's right to recover in tort against general contractors.

As alleged in Plaintiffs' Complaint, Defendants were the general contractors with respect to a contract with the Department of State. In support of such contract, Defendants contracted with non-party DynCorp International FZ-LLC, which in turn employed Plaintiff's decedent Samuel Parlin. Congress has specifically acted in this circumstance to define the rights, liabilities and immunities of the parties. The Defense Base Act applies the provisions of the Longshoremen's and Harbor Workers' Compensation Act to "the injury or death of any employee engaged in any employment ... under a contract entered into with the United States or any executive department ... or any subcontract, or subordinate contract with respect to such contract, where such contract is to be performed outside the continental United States ..." 42 U.S.C.S. § 1651(a)(4).

Where the decedent was employed by a subcontractor, as here, the Longshore Act specifically makes immune from tort liability the employer-subcontractor and specifically **excludes** from immunity all third parties, including the general contractor.

33 U.S.C.S. § 905(a). See, e.g., *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818-819 (2001) (Longshore Act "expressly **preserves** all claims against third parties," emphasis in original); see also *Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1250 (3rd Cir. 1987, Sloviter, J.) (purpose of 1984 amendments to Longshore Act was to overturn Supreme Court decision that held general contractors were immune from state tort liability).

Thus, in this case "policy choices and value determinations" have already been resolved in the halls of Congress: Congress has made clear, overturning a 1984 Supreme Court opinion to do so, that the controversy *sub judice*, between a general contractor to a government contract abroad and the employee of a subcontractor, is to be resolved by way of state tort law.

### 3. The Judiciary Specifically Established an Immunity Doctrine for Defendants' Arguments, Which Defendant Has Failed to Raise Because Defendants Recognize It, Too, Is Inapplicable

Also critically, and independently dispositively, Defendants' core argument -- that "resolving issues regarding the adequacy of security measures provided to civilian contractors and acceptable travel conditions for civilian contractors in Iraq may require the court to assess the wisdom of the government's strategic and tactical decisions" -- does **not** implicate the political question doctrine, but rather implicates the government contractor defense. See *Boyle v. United Technologies Corp.*, 487 U.S. 500, 509 (1988)(government contractor defense applicable where defendant claims state-imposed duty of care is precisely contrary to the duty imposed by the Government contract). Defendants' repackaging of their defense as a novel "political question" is nothing more than subterfuge upon the Court, an attempt to avoid the existing

precedent explicitly rejecting the government contractor defense where the defendant was not specifically directed to engage in the conduct of which the plaintiff complains.

Defendants' disguised government contractor defense appears throughout Defendants' Brief. See, e.g., *Def. Brief*, B(3). For example, Defendants assert that Plaintiffs' Complaint makes "allegations without regard to the U. S. Department of State contractual requirements." *Def. Brief*, p. 16.[5] Defendants further assert "the court will be required to evaluate and possibly supersede or void the terms of the contract approved by the United States Department of State regarding the provision of certain safety and protective equipment to contract personnel..." *Id.*, p. 17. These arguments have nothing to do with the political question doctrine, and Defendants cite no precedent arguing otherwise. Yet, ample precedent exists in the "government contractor" line of cases rejecting these very same arguments.

In fact, as Defendants chose to withhold from the Court, the government contractor defense is available **solely** where the government **specifically directed** the Defendants to engage in the **precise** conduct upon which plaintiff complains. In the context of manufacturing contracts (which are far more specific and detailed than service contracts, like the contract at issue here), the Third Circuit has reiterated that, to enjoy the government contractor defense, the defendant bears the burden of establishing:

> (1) the United States approved reasonably precise specifications; (2) the equipment conformed to those specifications; and (3) the supplier warned the United States about the dangers in the use of the equipment that were known to the supplier but not to the United States.

---

5    Plaintiff notes here, again, that Defendants have not provided this Court or Plaintiff with a copy a said contract. Thus, all allegations must be made "without regard" to the contract, and this Court must rule "without regard" to the contract, as Defendants refuse to produce a copy of it for review.

*Carley v. Wheeled Coach*, 991 F.2d 1117, 1119 (3rd Cir. 1993)(reversing District Court's granting of summary judgment, finding defense not met); see also *Megill v. Worthington Pump, Inc.*, 1999 U.S. Dist. LEXIS 4433 (D. Del, March 26, 1999) (defense rejected in suit against Naval manufacturer for failure to warn about dangers of asbestos, despite the specific contractual requirements to use asbestos, because the Navy did not require the manufacturer not to warn of asbestos dangers).

As described *supra*, under the allegations in Plaintiffs' Complaint -- indeed, even under the Defendants' description of the facts in their brief -- no such specific direction occurred. See *Ibrahim v. Titan Corp.*, 2007 U.S. Dist. LEXIS 81794 * 28-30 (D.D.C. Nov. 6, 2007)(in tort case against private military contractors operating in Iraq under government contract, court applied government contractor defense to company whose agents "performed their duties under the direct command and exclusive operational control of military personnel" and rejected defense for company whose employees retained "significant independent authority.")

Here, as this Court must accept as true, Defendants operated **entirely independent** of government control, with a general contractual duty to ensure the safety of their subcontractors and employees themselves, without government intervention. Defendants' unsourced and unverified descriptions of the contract and their performance -- all made **without even producing the contract for the Court's review** -- must be rejected out of hand as factual assertions in violation of the dismissal standard under *Phillips*.

## C.    Judicially Managable Standards Are Available

As described above, the core of Defendants' "judicially discoverable and manageable standards" argument, made without reference to any precedent except for

14

*Smith* (which is not binding and was distinguished above) is nothing more than a government contractor defense in disguise. Supreme Court and Third Circuit precedent clearly instructs courts not to "shirk [their] responsibility merely because [their] decision may have significant political overtones." *Gross*, 456 F.3d at 377, quoting *Japan Whaling*, 478 U.S. at 230. In fact, courts have had no trouble:

- Bringing to trial a tort claim for assault brought by detainees allegedly abused by employees of U.S. contractor at Iraqi prison. *Ibrahim v. Titan Corp.*, 2007 U.S. Dist. LEXIS 81794 (D.D.C. Nov. 6, 2007);

- Awarding wrongful death damages, under Iraqi law, to family of a military soldier killed in a car accident in Iraq with a foreign owned and operated vehicle. *Baragona v. Kuwait Gulf Link Transp. Co.*, 2007 U.S. Dist. LEXIS 81804 (N.D. Ga. Nov. 5, 2007);

- Applying United States tort law to claims for personal injury and wrongful death caused by state sponsors of terrorism under The Antiterrorism and Effective Death Penalty Act of 1996 amendments to the Foreign Sovereign Immunity Act. See, e.g., *Dammarell v. Islamic Republic of Iran*, 2005 U.S. Dist. LEXIS 5343, (D.D.C. Mar. 29, 2005).

Indeed, the very same Southern District of Texas upon which Defendants heavily rely had no trouble exercising jurisdiction and applying U.S. law to sexual harassment claims brought by an employee of a government contractor, even where **all** of the relevant conduct occurred in Iraq. *Barker v. Halliburton Co.*, 2008 U.S. Dist. LEXIS 6741 (Jan. 30, 2008).

Put simply, this case **is** a "garden variety" tort suit involving events that occurred overseas, for which liability attaches under a well-settled tort exception to the Defense Base Act and Longshore Act. The relevant witnesses are all United States citizens, the addresses of whom are well known to the Defendants, who either employed them or contracted with their employer. The United States military exercised absolutely no control over the Defendants' conduct, and indeed, was not even aware of Defendants'

decision to order Plaintiff-decedent to travel across Baghdad, much less exercising specific control over such travel.

**D.    Venue is Appropriate in Delaware and Inappropriate in Virginia**

### 1.    Venue is Appropriate in Delaware

Defendants are both Delaware corporations, and "acknowledge[] that they are incorporated or formed under the laws of the State of Delaware and that this lawsuit may be filed in this Court." *Def. Brief*, p. 22. Yet, Defendants assert that "venue is improper in this judicial district and thus the case must be dismissed." *Id.*, p. 21. In "support" of such an absurd proposition, Defendants make a number of vague arguments that, if appropriate, would have been made under principles such as *forum non conveniens*. Perhaps in recognition of the futility of such arguments, Defendants do not actually raise *forum non conveniens*, but rather brazenly assert that, because many of the relevant events occurred in Iraq, **no** forum is appropriate to hear this dispute between a United States citizen and two United States corporations, and so this case must be dismissed. *Def. Brief*, p. 23 ("Consequently, DynCorp submits that the complaint should be dismissed because of improper venue...").

Such an argument would not prevail in a first-year Civil Procedure class and should not prevail here. *Cottman Transmission Sys. v. Martino*, upon which Defendants heavily rely, solely interprets 28 U.S.C. § 1391(a)**(2)**. 36 F.3d 291 (3rd Cir. 1994). § 1391(a)**(1)** makes clear venue is appropriate "where any defendant resides, if all defendants reside in the same State," as is the case here, while § 1391(a)**(3)** makes clear venue is appropriate where "any defendant is subject to personal jurisdiction at the time the action is commenced [i.e., Delaware], if there is no district in which the action may otherwise be brought." For this Court to accept Defendants' arguments, it must

16

read (a)(1) completely off of the statute, find venue inappropriate under (a)(2), and then also read (a)(3) completely off of the statute, to hold **no** venue is appropriate and dismiss. Such would be reversible error.

### 2. Defendants Have Not Shown Justice Weighs Strongly in Favor of Transfer to Virginia

"The burden of establishing the need for transfer still rests with the movant. And, in ruling on defendants' motion the plaintiff's choice of venue should not be lightly disturbed." *Jumara v. State Farm Ins. Co.*, 55 F.3d 873, 879 (3rd Cir. 1995)(internal citations and quotations omitted). "Unless the balance is strongly in favor of a transfer, the plaintiff's choice of forum should prevail." *ADE Corp. v. KLA-Tencor Corp.*, 138 F. Supp.2d 565, 567 (D. Del. 2001). Defendants admit the only relevant private factors here are Plaintiffs' preference, Defendants' preference, where the claim arose, and the convenience of the parties as indicated by their relative physical and financial condition.[6]

Plaintiff chose the only forum in which jurisdiction and venue were **certain** over the Defendants, all of whom are incorporated in Delaware. Plaintiff also chose the only appropriate forum for determining the relationship of Defendants to one another and to Plaintiff-decedent's employer, a non-party of uncertain relation to Defendants. As Defendants asserted in their notice of removal (¶ 32), Defendants will assert a defense based upon the Defense Base Act and the Longshore Act. Yet, as described in section (B)(2) *supra*, as general contractors they could not possibly fall within those Acts' immunity. Defendants thus apparently intend to present a defense based entirely upon

---

[6]    Despite Defendants' later assertion about the location of witnesses and documents, the concern is only if those witnesses or documents are **wholly unavailable** in the chosen forum, and could not be produced at time of trial in that forum. As Defendants have made no showing of such, their arguments must be disregarded.

the relationship of their corporate structures and the contractual arrangements they had with the non-party employer. Thus, their defense will present questions of pure Delaware corporate and contractual law, questions that courts in Virginia are manifestly unqualified to answer.

Plaintiff has thus obviously chosen Delaware for legitimate reasons, and as such her choice is entitled to substantial deference:

> Although transfer of an action is usually considered as less inconvenient to a plaintiff if the plaintiff has not chosen its home turf or a forum where the alleged wrongful activity occurred, the plaintiff's choice of forum is still of paramount consideration, and the burden remains at all times on the defendants to show that the balance of convenience and the interests of justice weigh strongly in favor of transfer.

*In re M.L.-Lee Acquisition Fund II, L.P.*, 816 F. Supp. 973, 976 (D. Del. 1993).

This Court was recently presented with virtually identical arguments by defendants (and less compelling arguments by plaintiffs) in *Adams v. Crowley*, 2005 U.S. Dist. LEXIS 9885 (D. Del., May 25, 2005). There,

> First, none of the defendants live in or near Delaware. Coram, now a private company, is incorporated in Delaware with its principal place of business in Denver, Colorado. Coram's employees and business records are located as well in Denver, Colorado. Plaintiff, Coram's Chapter 11 Trustee, resides in Philadelphia. According to defendants, these facts compel the transfer of this case to Colorado because no one involved in the litigation has a direct connection to the District of Delaware.

*Id.* at * 6. This Court **denied** transfer because "Coram (through its directors) chose Delaware as its place of incorporation," demonstrating "a substantial connection to Delaware." *Id.* "Moreover," the Court continued, "given the fact that most discovery will be taken in the same fashion regardless of where trial may proceed, the convenience of the defendants is not a compelling factor." *Id.* at * 7.

18

The Court is thus left determining, with regard to private factors, if "the convenience of the parties as indicated by their relative physical and financial condition" weighs "strongly" in Defendants' favor. Plaintiff is a private individual who has chosen counsel in and near Delaware. Defendant DynCorp International Inc. is a multinational corporation with annual revenue in excess of $2,000,000,000, and gross profit exceeding $250,000,000, which has retained "one of the premier litigation defense firms in the United States"[7] with offices across the nation, as well as counsel in Delaware. As noted by this Court in *Adams*, the majority of discovery is location-independent.

With regard to "public" factors, any judgment entered here is clearly enforceable against these Delaware-incorporated entities, the administrative difficulties of managing the case here or in Virginia are the same, and Delaware obviously has a compelling interest in determining the liabilities, immunities and relationships of its own corporations. As such, these factors, too, weigh against transfer.

---

[7]     http://www.wilsonelser.com/Practices/

DB02:6662594.1                                                                        067040.1001

## CONCLUSION

For the above reasons, Plaintiffs respectfully request this Court deny Defendants' Motion to Dismiss and deny Defendants' alternative Motion to Transfer Venue.

Respectfully submitted,

Neilli Mullen Walsh (2707)
Ben T. Castle (520
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6618/6603

Attorneys for Plaintiffs

*Of Counsel:*
James E. Beasley, Jr.
Maxwell S. Kennerly
THE BEASLEY FIRM, LLC
1125 Walnut Street
Philadelphia, PA  19107-4997
(215) 592-1000

Dated:   March 14, 2008