IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

CYNTHIA PARLIN, Individually, and )
in her Capacities as Surviving )
Spouse of Samuel Parlin, And As )
Executrix of the Estate of Samuel )    C.A. No.: 1:08-cv-00107 JJF
Parlin, Deceased, )
 )    TRIAL BY JURY DEMANDED
                          Plaintiffs, )
 )
           v. )
 )
DYNCORP INTERNATIONAL, INC., )
et al., )
 )
                       Defendants. )

## PLAINTIFFS' OPENING BRIEF IN SUPPORT
## OF THEIR MOTION FOR REMAND

Neilli Mullen Walsh (2707)
Ben T. Castle (520)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE  19899-0391
(302) 571-6618/6603

Attorneys for Plaintiffs

*Of Counsel:*
James E. Beasley, Jr.
Maxwell S. Kennerly
THE BEASLEY FIRM, LLC
1125 Walnut Street
Philadelphia, PA  19107-4997
(215) 592-1000

Dated:  March 20, 2008

# TABLE OF CONTENTS

**Page**

TABLE OF AUTHORITIES.................................................................................. ii

NATURE AND STAGE OF THE PROCEEDINGS.................................................. 1

SUMMARY OF ARGUMENT ............................................................................. 3

STATEMENT OF FACTS ..................................................................................5

ARGUMENT ...................................................................................................7

STANDARD OF REVIEW..................................................................................7

I.     PLAINTIFFS' COMMON LAW TORT CLAIMS DO NOT "ARISE UNDER" THE LAWS OF THE UNITED STATES ..................................... 8

     A.   The Existence of a Federal Defense Does Not Create "Arising Under" Jurisdiction ..................................................................... 8

     B.   Defendants' Vague "Controlling Authority" Argument, Made Without Reference to Case Law, is An Attempt to Avoid the Strict Requirements of "Complete Preemption"......................................... 9

     C.   Defendants' Vague "Uniquely Federal Interests" Argument is An Attempt to Avoid the Strict Requirements of the "Government Contractor Defense" ..............................................10

II.    FEDERAL OFFICER REMOVAL IS ONLY AVAILABLE WHERE THE DEFENDANT ACTED PURSUANT TO "DIRECT ORDERS" OF A FEDERAL OFFICER, NOT WHERE THE DEFENDANT ACTED UNDER THE GENERAL AUSPICES OF A FEDERAL CONTRACT..................................................................................14

CONCLUSION ..............................................................................................18

i

067040.1001

# TABLE OF AUTHORITIES

**Page(s)**

## Cases

*Aaron v. National Union Fire Ins. Co.*, 876 F.2d 1157 (5th Cir. 1989)..............................10

*Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26 (3d Cir. 1985)................................7

*Aetna Health Inc. v. Davila*, 542 U.S. 200 (2004) ............................................................ 8

*Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268 (C.D. Cal. 1998) ................................ 17

*Baragona v. Kuwait Gulf Link Transp. Co.*, 2007 U.S. Dist. LEXIS 81804
(N.D. Ga. Nov. 5, 2007) .................................................................................................... 9

*Beaver Valley Power Co. v. National Eng'g & Contracting Co.*, 883 F.2d
1210 (3d Cir. 1989)........................................................................................................... 12

*Blahnik v. BASF Corp.*, 2006 U.S. Dist. LEXIS 72038 (S.D. Tex., Oct. 3,
2006)................................................................................................................................. 16

*Boyer v. Snap-On Tools Corp.*, 913 F.2d 108 (3d Cir. 1990)..............................................7

*Boyle v. United Techs Corp.*, 487 U.S. 500 (1988) ........................................... 4, 11, 12, 13

*Carley v. Wheeled Coach*, 991 F.2d 1117 (3d Cir. 1993)................................................... 13

*Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653 (E.D. Tex.
1999)................................................................................................................................. 16

*Feidt v. Owens Corning Fiberglass Corp.*, 153 F.3d at 127 .................................14, 15, 16

*Freiberg v. Swinerton & Walberg Prop. Services*, 245 F. Supp. 2d 1144 (D.
Colo. 2002) ...................................................................................................................... 16

*Good v. Armstrong World Indus.*, 914 F. Supp. 1125 (E.D. Pa. 1996) ............................ 15

*Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308 (2005)................. 3, 11

*Guckin v. Nagle*, 259 F. Supp. 2d 406 (E.D. Pa. 2003) ..................................................... 15

*Ibrahim v. Titan Corp.*, 2007 U.S. Dist. LEXIS 81794 (D.D.C. Nov. 6,
2007).................................................................................................................................. 13

*In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d
112 (2d Cir. 2007) .......................................................................................................4, 14

*In re MTBE Prods. Liab. Litig.*, 488 F.3d 112 (2d Cir. 2007)........................................... 16

067040.1001

*Krashna v. Oliver Realty, Inc.*, 895 F.2d 111 (3d Cir. 1990)..........................9, 10

*Martin v. Franklin Capital Corp.*, 126 S. Ct. 704 (2005) ...................................... 8

*Megill v. Worthington Pump, Inc.*, 1999 U.S. Dist. LEXIS 4433 (D. Del., March 26, 1999) ..................................................................................4, 13, 15, 16

*N.J. Dep't of Envtl. Prot. v. Dixo Co.*, 2006 U.S. Dist. LEXIS 68288 (D.N.J., Sept. 22, 2006)............................................................................ 7, 15

*Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237 (3d Cir. 1987, Sloviter, J.) ......................................................................................................... 11

*Nordan v. Blackwater Sec. Consulting, LLC, et. al.*, 460 F.3d 576 (4th Cir. 2006), *cert. denied* 127 S. Ct. 1381 (2007) ......................................................... 11

*Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811 (2001)........................... 11

*Pack v. AC and S, Inc.*, 838 F. Supp. 1099 (D. Md. 1993) ..................................... 17

*Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936 (3d Cir. 1988).................................................................................3, 10

*Rivet v. Regions Bank of La.*, 522 U.S. 470 (1998)........................................ 3, 8

*Taylor v. Comsat*, 2006 U.S. Dist. LEXIS 81949 (S.D. W.Va., Nov. 8, 2006) ......................................................................................................... 16

*Van Horn v. Ark. Blue Cross & Blue Shield*, 2007 U.S. Dist. LEXIS 83622 (E.D. Ark. Oct. 31, 2007) ............................................................................ 16

*Watson v. Philip Morris Cos.*, 127 S. Ct. 2301 (2007) ............................... 4, 7, 14

*Weese v. Union Carbide Corp.*, 2007 U.S. Dist. LEXIS 73970 (S.D. Ill., Oct. 3, 2007) ............................................................................................ 16

**Statutes**

33 U.S.C.S. § 905(a) ........................................................................................ 11

**Rules**

28 U.S.C. § 1441(b).......................................................................................... 1

DB02:6679019.1   067040.1001

## NATURE AND STAGE OF THE PROCEEDINGS

Plaintiffs' Complaint, alleging wrongful death, was filed on January 16, 2008 in Delaware state court, in the Superior Court in and for New Castle County. Defendants removed this action to this Court on February 19, 2008, and on February 26, 2008 moved to dismiss this case.[1]

Defendants' Notice of Removal asserts removal upon four grounds, the first three under "Federal Question" jurisdiction and the last under the "Federal Officer" removal statute. Defendants assert:

A.      The existence of a <u>defense</u> under Federal law creates original jurisdiction under 28 U.S.C. § 1441(b), despite one-hundred years' precedent rejecting such argument;

B.      "Federal ..., rather than state, law should be applied to this case," without citing to any authority whatsoever in favor of removal;

C.      "Uniquely federal interests" somehow compel removal, despite clear "government contractor defense" precedent rejecting that very argument; and

D.      Defendants were deputized as "federal officers" because "Defendants were acting in furtherance of their contractual obligations with the U.S. Government," despite clear precedent preventing service contractors operating generally under government contracts from claiming they are "federal officers."

No discovery has transpired. In support of their Motion, Defendants have produced no factual materials, not even a copy of the "CIVPOL" contract they claim compels removal nor any affidavits or other materials showing "direct orders" from

---

[1]      Please see Plaintiffs' Response for further details.

federal officers. Thus, the only facts properly before the Court are those alleged by Plaintiffs' Complaint, which must be accepted as true, with all reasonable inferences made in Plaintiffs' favor.

2

## SUMMARY OF ARGUMENT[2]

### I. FEDERAL DEFENSES DO NOT CREATE FEDERAL QUESTION JURISDICTION

A.    A federal defense cannot by itself create jurisdiction. Indeed, "a case may **not** be removed to federal court on the basis of a federal defense, . . . **even if** the defense is anticipated in the plaintiff's complaint, **and even if** both parties admit that the defense is the **only** question truly at issue in the case." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (internal quotation omitted, emphases added).

B.    Defendants' vague "controlling authority" argument is nothing more than an attempt to avoid the strict requirements of "complete preemption." Defendants do not advance "complete preemption" in their Notice of Removal, presumably because they recognize "there is a very limited area in which a federal court in a case removed from a state court is authorized to recharacterize what purports to be a state law claim as a claim arising under a federal statute." *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988). No Court has found the Defense Base Act or Longshore and Harbor Workers' Compensation Act completely preempts state tort law; to the contrary, those Acts explicitly preserve state law tort remedies in this case.

C.    The words "[f]ederal issue" are not "a password opening federal courts to any state action embracing a point of federal law." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314 (2005)(finding exercise of "federal issue" jurisdiction appropriate only where the "meaning of the federal statute is ... an essential element of [plaintiff's] claim," 545 U.S. at 315). Defendants' "uniquely federal interests" argument

---

[2]    Headings here follow those of Defendants' Notice of Removal, *i.e.,* I(A)-(C) and II.

is likely an attempt to avoid the strict requirements of the "government contractor defense." *Boyle v. United Techs. Corp.*, 487 U.S. 500 (1988)(defense available only where "state-imposed duty of care that is the asserted basis of the contractor's liability ... is **precisely contrary** to the duty imposed by the Government contract")(emphasis added); see, e.g., *Megill v. Worthington Pump, Inc.*, 1999 U.S. Dist. LEXIS 4433 (D. Del., March 26, 1999)(defense rejected in suit against Naval manufacturer for failure to warn about dangers of asbestos, despite specific contractual requirements to use asbestos, because the Navy did not specifically require the manufacturer <u>not</u> to warn sailors of asbestos dangers).

## II.    FEDERAL OFFICER STATUTE REQUIRES "DIRECT ORDERS"

Federal officer removal is only available where "the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision." *Watson v. Philip Morris Cos.*, 127 S. Ct. 2301, 2308 (2007)(rejecting use of statute by intensely regulated industry); see *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124-25 (2d Cir. 2007)(requiring "that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's **direct orders** or to comprehensive and detailed regulations")(emphasis added). Here, Defendants have not even provided a copy of the government contract, much less evidence of "direct orders" by Federal officers, so there is nothing for the Court to review: the Court must accept as true that Defendants' conduct was wholly independent of government control, much less pursuant to a "direct order."

## STATEMENT OF FACTS

Plaintiff-decedent, Samuel Parlin, died from injuries sustained while employed by a subcontractor with respect to a general contractor that contracted with the United States government to perform civilian work in Iraq. Plaintiff-decedent was a United States citizen and resident of Georgia. Defendants are United States corporations incorporated in Delaware. Plaintiff has already recovered workers compensation provided by Plaintiff-decedent's employer (which is not a party to this action), and now brings suit against the general contractors, pursuant to the Longshore and Harbor Workers Compensation Act, as applied by the Defense Base Act.

Plaintiff-decedent was employed by non-party DynCorp International FZ-LLC, a Dubai company, to serve as an international police liaison officer in Iraq, where he assisted in the training of an indigenous police force. Plaintiff-decedent's employer, in turn, was under contract with Defendants, who in turn were under contract with the Department of State.

Upon information and belief, Defendants will not dispute the above when called to Answer Plaintiffs' Complaint.

As alleged by Plaintiffs' Complaint, accepted as true here, Defendants' contract with the Department of State included general provisions describing Defendants' responsibility to ensure the safety and security of both their employees and the employees of subcontractors. Complaint at ¶¶ 6, 13, 14, 15, 16. The contract was a civilian contract of a civilian nature, not a military contract, and Defendants, not the United States military, retained control over their employees and subcontractors. Id. at ¶ 18.

DB02:6679019.1                                              067040.1001

Defendants negligently, recklessly, knowingly and/or intentionally undersupplied their employees and subcontractors, sometimes, for example, providing them with dangerous weapons obtained in violation of United States and Iraqi law. Id. at ¶¶ 23, 24.

By January 2006, Plaintiff-decedent had completed nearly two (2) years of service abroad, at which point he was scheduled to return home. Id. at ¶ 29. Defendants advised Plaintiff-decedent that he was being considered for a different position, and so ordered that he travel from the Baghdad International Airport, where he was stationed, to the Baghdad Hotel, on the other side of Baghdad. Id. at ¶¶ 31, 32. Such travel was ordered despite the well-known risk of travel, particularly without military escort, in Baghdad. Id. at ¶ 30.

Unbeknownst to Plaintiff-decedent, the position for which he was "interviewing" had already been awarded to another individual. Id. at ¶ 35. As such, his travel was entirely unnecessary, in flagrant disregard for his safety and security. Id. at ¶ 37. Worse, his travel was performed in a knowingly unsafe manner, with insufficient weaponry, armor, vehicles and other supplies for the travel. Id. at ¶ 40.

As a proximate result of the above conduct, Plaintiff-decedent died from wounds sustained after an Improvised Explosive Device was detonated near his vehicle as he traveled through Baghdad. Id. at ¶ 38.

DB02:6679019.1    067040.1001

## ARGUMENT

### STANDARD OF REVIEW

As the party urging jurisdiction, Defendants bear the burden of proving federal jurisdiction exists. *Boyer v. Snap-On Tools Corp.*, 913 F.2d 108, 111 (3d Cir. 1990). It is well-settled that "[b]ecause lack of jurisdiction would make any decree in the case void and the continuation of the litigation in federal court futile, **the removal statute should be strictly construed and all doubts should be resolved in favor of remand**." *Abels v. State Farm Fire & Casualty Co.*, 770 F.2d 26, 29 (3d Cir. 1985), citing 14 C. Wright, A. Miller & E. Cooper, *Federal Practice and Procedure* § 3642 at 149 (2d ed. 1985) (emphasis added).

With regard to the Federal Officer statute, as the District Court for the District of New Jersey noted,

> Because the action at bar involves a private party's attempt to remove under the federal officer removal statute, the policy reasons for generally favoring removal and the existence of federal jurisdiction under section 1442 are not applicable here. To the contrary, **a private party seeking to assert the right of federal officer removal bears a special burden of establishing the official nature of its activities**.

*N.J. Dep't of Envtl. Prot. v. Dixo Co.*, 2006 U.S. Dist. LEXIS 68288 * 6 (D.N.J., Sept. 22, 2006)(internal citations and quotations omitted, emphasis added). The Supreme Court's recent explanation of the statute's purpose supports a stricter application to private parties, particularly where federalism concerns are absent. *Watson v. Philip Morris Cos.*, 127 S. Ct. 2301, 2307-2308 (2007)("When a company subject to a regulatory order (even a highly complex order) complies with the order, it does not ordinarily create a significant risk of state-court 'prejudice.' Nor is a state-court lawsuit

brought against such a company likely to disable federal officials from taking necessary action designed to enforce federal law.")(internal citation omitted).

## I.    PLAINTIFFS' COMMON LAW TORT CLAIMS DO NOT "ARISE UNDER" THE LAWS OF THE UNITED STATES

### A.    The Existence of a Federal Defense Does Not Create "Arising Under" Jurisdiction

It is black-letter law that a federal defense does not itself permit removal. "The existence of a federal defense normally does not create statutory 'arising under' jurisdiction ... and 'a defendant may not [generally] remove a case to federal court unless the **plaintiff's** complaint establishes that the case 'arises under' federal law.'" *Aetna Health Inc. v. Davila*, 542 U.S. 200, 207 (2004)(emphasis in original) citing *Louisville & N. R. Co. v. Mottley*, 211 U.S. 149, 152 (1908) and quoting *Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal.*, 463 U.S. 1, 9-10 (1983). Indeed, "a case may **not** be removed to federal court on the basis of a federal defense, . . . **even if** the defense is anticipated in the plaintiff's complaint, **and even if** both parties admit that the defense is the **only** question truly at issue in the case." *Rivet v. Regions Bank of La.*, 522 U.S. 470, 475 (1998) (internal quotation omitted, emphases added).

As such, Defendants' first ground for removal -- "the interpretation and application of federal statutes will determine the viability plaintiff's claim," *Def. Notice of Removal I(A)* -- is transparently frivolous. Worse, the single District of Colorado case Defendants cite in "support" of this argument does not even mention removal. For the time wasted in addressing this objectively unreasonable basis for removal, Plaintiff submits she is entitled to costs and attorneys fees under *Martin v. Franklin Capital Corp.*, 126 S. Ct. 704, 711 (2005).

8

**B.** **Defendants' Vague "Controlling Authority" Argument, Made Without Reference to Case Law, is An Attempt to Avoid the Strict Requirements of "Complete Preemption"**

Defendants' second argument in their Notice of Removal -- "controlling authority for plaintiff's claims is most likely to be found in federal [law]," *Def. Notice of Removal I(B)* -- is at first glance a second frivolous attempt at removing on the grounds of a "federal defense."[3] As such, Plaintiff submits it should be rejected out of hand as objectively unreasonable.

Yet, Defendants may in fact be "sand-bagging" their Notice of Removal with the intent of later raising a "complete preemption" argument, so Plaintiff addresses such argument here for the convenience of the Court.

"Under an exception to the well-pleaded complaint rule known as the complete preemption doctrine, the preemptive force of a statute can be so extraordinary that it converts an ordinary state common-law complaint into one stating a federal claim for purposes of the well-pleaded complaint rule." *Krashna v. Oliver Realty, Inc.*, 895 F.2d 111, 113 (3d Cir. 1990)(internal quotation omitted). The Court is to exercise caution in

---

[3]    Plaintiff is admittedly baffled by the relevance of "recent efforts" by the government, referenced without any citation, to a civil suit relating to events in the past. As described by Plaintiffs' Response to Defendants' Motion to Dismiss, to the extent the Executive and Congress have acted here, they have, respectively, made the Defendants responsible for the safety and security of Plaintiff-decedent and have specifically preserved Plaintiff's right to relief under state tort law.

Further, Defendants' reference to *lex loci delicti*, to the extent it applies, counsels in favor of state, not federal, jurisdiction, as (1) *lex loci delicti* requires the Court first evaluate state tort law and (2) Iraqi law is not substantially different from American state tort law, and thus both factors counsel in favor of state court, which is more familiar and experienced with these tort principles. See, e.g., *Baragona v. Kuwait Gulf Link Transp. Co.*, 2007 U.S. Dist. LEXIS 81804 (N.D. Ga. Nov. 5, 2007)("The Court has evaluated four principles of law that are necessary to determine the outcome in this case: liability for negligence resulting in wrongful death; respondeat superior; standing; and wrongful death damages. The Court concludes that Iraqi law does not contravene Georgia public policy in any of these areas.")

9

067040.1001

finding "complete preemption," as "there is a very limited area in which a federal court in a case removed from a state court is authorized to recharacterize what purports to be a state law claim as a claim arising under a federal statute." *Railway Labor Executives Ass'n v. Pittsburgh & Lake Erie R.R. Co.*, 858 F.2d 936, 942 (3d Cir. 1988). There is a two-part test under *Krashna* for finding preemption but, as Defendants' Notice of Removal does not even claim preemption, Plaintiff will not make their argument for them.

Further, Plaintiff is unaware of **any** case law, in any District or Circuit, holding the Defense Base Act or the Longshore Harbor Workers' Compensation Act completely preempts state tort law. In fact, *Aaron v. National Union Fire Ins. Co.*, cited approvingly by *Krashna*, *supra*, found the Longshore Act (which the Defense Base Act simply applies to government contracts overseas[4]) to be "nothing more than a statutory defense to a state-court cause of action -- **the classic circumstance of non-removability**." 876 F.2d 1157, 1166 (5th Cir. 1989)(vacating district court dismissal and remanding to state court)(emphasis added).

As such, the vague "Federal" concerns noted by Defendants plainly fail to meet their burden to establish jurisdication for removal.

    **C.**    **Defendants' Vague "Uniquely Federal Interests" Argument is An Attempt to Avoid the Strict Requirements of the "Government Contractor Defense"**

Defendants' third argument -- "Plaintiff's Allegations Raise 'Uniquely Federal Interests,'" *Def. Notice of Removal I(C)* -- is at first glance a third frivolous attempt at

---

4    See Plaintiffs' Complaint and Plaintiffs' Response to Defendants' Motion to Dismiss for more detail.

        

removing on the grounds of a "federal defense."[5] The sole case cited in support[6] makes clear that the words "[F]ederal issue" are not "a password opening federal courts to any state action embracing a point of federal law." *Grable & Sons Metal Prods. v. Darue Eng'g & Mfg.*, 545 U.S. 308, 314-315 (2005). In *Grable*, plaintiff's nominally state law action to quiet title relied entirely upon the construction of a federal tax lien statute, so "the meaning of the federal statute is thus an essential element of its quiet title claim, and the meaning of the federal statute is actually in dispute; it appears to be the only legal or factual issue contested in the case." *Id.* at 315.

*Grable* is thus wholly distinguishable from the situation *sub judice*, in which plaintiff alleges ordinary state tort law claims, independent of federal law. More relevant than *Grable* is *Nordan v. Blackwater Sec. Consulting, LLC, et. al.*, where a government contractor in Iraq (a competitor of Defendants) also claimed "uniquely federal interests." 460 F.3d 576 (4th Cir. 2006), *cert. denied* 127 S. Ct. 1381 (2007). The Fourth Circuit made clear, in upholding the District Court's remand, "It is, in fact, axiomatic under our federalist system of government that state courts have the authority to decide federal constitutional issues. Blackwater may assert in state court, subject to review by the United States Supreme Court, its defenses regarding the constitutional exclusivity of

---

[5]    Plaintiff is again baffled by the relevance of the "intent" of the Executive Branch to develop more detailed oversight over Defendants in the future to events that transpired in the past. Indeed, such "intent" reveals the <u>absence</u> of "uniquely federal interests" beyond those inherent in all cases implicating the Defense Base Act. Yet, in such circumstance Congress has already acted to <u>preserve</u>, not deny, state tort rights. 33 U.S.C.S. § 905(a). See, e.g., *Norfolk Shipbuilding & Drydock Corp. v. Garris*, 532 U.S. 811, 818-819 (2001) (Longshore Act "expressly **preserves** all claims against third parties," emphasis in original); see also *Nieves v. Hess Oil Virgin Islands Corp.*, 819 F.2d 1237, 1250 (3d Cir. 1987, Sloviter, J.) (purpose of 1984 amendments to Longshore Act was to overturn Supreme Court decision that held general contractors were immune from state tort liability).

[6]    *Boyle*, cited by Defendants, does not address removal.

a federal administrative remedy." *Id.* at 592. As such, Plaintiff submits Defendants' "uniquely federal interest" removal argument should be rejected out of hand as objectively unreasonable.

Yet, Defendants may here also be "sand-bagging" their Notice of Removal with the intent of later raising a "government contractor" argument under *Boyle v. United Techs. Corp.*, which Defendants generally reference, so Plaintiff addresses such argument here for the convenience of the Court.[7] A defendant bears the burden of proving each element of the defense. *Beaver Valley Power Co. v. National Eng'g & Contracting Co.*, 883 F.2d 1210, 1217 n.7 (3d Cir. 1989). *Boyle* is instructive about the policies implicated by state tort suits that involve government contractors:

> Here the state-imposed duty of care that is the asserted basis of the contractor's liability (specifically, the duty to equip helicopters with the sort of escape-hatch mechanism petitioner claims was necessary) is **precisely contrary** to the duty imposed by the Government contract (the duty to manufacture and deliver helicopters with the sort of escape-hatch mechanism shown by the specifications). Even in this sort of situation, it would be unreasonable to say that there is always a "significant conflict" between the state law and a federal policy or interest. **If, for example, a federal procurement officer orders, by model number, a quantity of stock helicopters that happen to be equipped with escape hatches opening outward, it is impossible to say that the Government has a significant interest in that particular feature.** That would be scarcely more reasonable than saying that a private individual who orders such a craft by model number cannot sue for the manufacturer's negligence because he got precisely what he ordered.

*Boyle*, 487 U.S. at 509 (emphasis added). The Third Circuit has also applied the government contractor defense strictly to non-military contractors such as Defendants.

---

7    Also, as described *infra*, removal under the Federal Officer statute requires the defendant raise a "colorable federal defense." As shown in this section, Defendants do not have a "colorable" government contractor defense.

*Carley v. Wheeled Coach*, 991 F.2d 1117, 1119 (3d Cir. 1993)(reversing District Court's granting of summary judgment, finding defense not met even where government provided precise specifications for ambulance coach because defendant did not satisfy its burden to establish it warned the United States about all known dangers of the product).

This Court, in interpreting both the government contract defense and the Federal Officer removal statute (discussed *infra*) made quite clear the defense (and removal) was only available where the conduct complained of was **specifically directed** by the government:

> A crucial element of both the *Boyle* defense and the removal requirements is missing if the contractor fails to establish a causal connection between the conduct being supervised by the federal officer/government and the conduct deemed offensive in the plaintiff's complaint.

*Megill*, 1999 U.S. Dist. LEXIS 4433 * 11-12. *Megill* involved a suit for a failure to warn against a manufacturer who had used asbestos -- pursuant to specific Navy standards -- in vessels upon which the plaintiffs had served. *Megill*, too, remanded the case, despite the specific contractual requirements, because the Navy had not required the manufacturer not to warn users of the dangers of asbestos. Other Courts reviewing situations similar to those *sub judice* have also rejected these defenses where the defendant was not specifically directed to act in a certain way. See *Ibrahim v. Titan Corp.*, 2007 U.S. Dist. LEXIS 81794 * 28-30 (D.D.C. Nov. 6, 2007)(in tort case against private military contractors operating in Iraq under government contract, defense available for company whose agents "performed their duties under the direct command and exclusive operational control of military personnel" and rejected for company whose employees retained "significant independent authority").

13

Here, Defendants' Notice of Removal provides **no evidence whatsoever of specific government direction**: no direct orders, no comprehensive and detailed regulations, no affidavits, not even general communications from government officers. Indeed, Defendants have not even provided a copy of their contract with the Department of State. As such, this Court has **no facts at all** upon which it could find the government contractor defense or "uniquely federal interest" removal, much less sufficient facts to meet Defendants' heavy burden in establishing the propriety of removal.

## II. FEDERAL OFFICER REMOVAL IS ONLY AVAILABLE WHERE THE DEFENDANT ACTED PURSUANT TO "DIRECT ORDERS" OF A FEDERAL OFFICER, NOT WHERE THE DEFENDANT ACTED UNDER THE GENERAL AUSPICES OF A FEDERAL CONTRACT

Federal officer removal is only available where "the relationship between the contractor and the Government is an unusually close one involving detailed regulation, monitoring, or supervision." *Watson v. Philip Morris Cos.*, 127 S. Ct. 2301, 2308 (2007)(rejecting use of statute by intensely regulated industry); see *In re Methyl Tertiary Butyl Ether ("MTBE") Prods. Liab. Litig.*, 488 F.3d 112, 124-25 (2d Cir. 2007)(requiring "that the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's **direct orders** or to comprehensive and detailed regulations")(emphasis added).

Prior to *Watson*, the Third Circuit established a framework for evaluating removal under the Federal Officer statute. Under the *Feidt* test, the Defendant must establish that:

(1)    it is a "person" within the meaning of the statute;

(2)    the plaintiff 's claims are based upon the defendant's conduct "acting under" a federal office;

14

(3)    it raises a colorable federal defense; and

(4)    there is a causal nexus between the claims and the conduct performed under color of a federal office.

*Feidt v. Owens Corning Fiberglass Corp.*, 153 F.3d 124, 127 (3d Cir. 1998). See also

*Megill*, 1999 U.S. Dist. LEXIS 4433 * 6 (D. Del., March 26, 1999); *N.J. Dep't of Envtl.*

*Prot. v. Dixo Co.*, 2006 U.S. Dist. LEXIS 68288 * 5-7 (D.N.J., Sept. 22, 2006); *Guckin v.*

*Nagle*, 259 F. Supp. 2d 406, 416 (E.D. Pa. 2003).

As the District Court for the District of New Jersey made clear:

> Because the action at bar involves a private party's attempt to remove under the federal officer removal statute, the policy reasons for generally favoring removal and the existence of federal jurisdiction under section 1442 are not applicable here. To the contrary, **a private party seeking to assert the right of federal officer removal bears a special burden of establishing the official nature of its activities**.

*N.J. Dep't of Envtl. Prot.*, 2006 U.S. Dist LEXIS 68288 * 6 (internal citations and

quotations omitted, emphasis added). As the District Court for the Eastern District of

Pennsylvania wrote (and was quoted by *N.J. Dep't of Envtl. Prot.*):

> Removal must be predicated upon a showing that the acts forming the basis of the state suit were performed pursuant to an officer's **direct orders or comprehensive and detailed regulations**. By contrast, if the corporation establishes only that the relevant acts occurred under the **general auspices** of federal direction then it is not entitled to § 1442(a)(1) removal.

*Good v. Armstrong World Indus.*, 914 F. Supp. 1125, 1128 (E.D. Pa. 1996)(emphasis

added).  *Megill, Guckin, N.J. Dep't of Envtl. Prot.* and *Good* were all remanded.

Plaintiff has not found **any** cases in which a private party successfully removed under

the *Feidt* test.

067040.1001

The Federal Reporters outside the Third Circuit, too, are replete with opinions rejecting the very arguments advanced by Defendants:

- *In re MTBE Prods. Liab. Litig.*, 488 F.3d 112 (2d Cir. 2007)(denying removal of complaints alleging that corporations had contaminated water supplies through release of MTBE; though defendants used MTBE to comply with Congressional Clean Air Act, defendants did not establish that they were required by the federal government to use MTBE);

- *Weese v. Union Carbide Corp.*, 2007 U.S. Dist. LEXIS 73970 (S.D. Ill., Oct. 3, 2007) (like *Megill*, denying removal for case alleging failure to warn of asbestos danger where government did not prevent the defendant from warning);

- *Van Horn v. Ark. Blue Cross & Blue Shield*, 2007 U.S. Dist. LEXIS 83622 (E.D. Ark., Oct. 31, 2007) (government contractor administering federal health plan not entitled to remove under § 1442 because contractor had discretion over challenged conduct);

- *Taylor v. Comsat*, 2006 U.S. Dist. LEXIS 81949 (S.D. W.Va., Nov. 8, 2006) (denying section 1442 removal of a complaint alleging injuries from benzene exposure at the National Science Foundation's National Radio Astronomy Observatory facility where Comsat was not prevented by a federal officer or agency from complying with state law requiring a reasonably safe work environment);

- *Blahnik v. BASF Corp.*, 2006 U.S. Dist. LEXIS 72038 (S.D. Tex., Oct. 3, 2006)(denying removal where there was no evidence that the government specified the composition of the offending products);

- *Freiberg v. Swinerton & Walberg Prop. Services*, 245 F. Supp. 2d 1144, 1155 (D. Colo. 2002) (noting federal officer removal statute should be "read expansively only when the immunity of individual federal officials, and not government contractors, is at issue" and holding government contractor not entitled to remove suit alleging negligent exposure to asbestos at U.S. government's Rocky Flats nuclear weapons production facility);

- *Faulk v. Owens-Corning Fiberglass Corp.*, 48 F. Supp. 2d 653, 664 (E.D. Tex. 1999) (§ 1442(a)(1) nexus test requires proof that "the federal officer really did make [the defendants] do it.");

- *Arness v. Boeing N. Am., Inc.*, 997 F. Supp. 1268 (C.D. Cal. 1998)(denying removal where defendant private contractor had discretion to dispose of toxic substance used to flush rocket engine hardware as it saw fit); and

- *Pack v. AC and S, Inc.*, 838 F. Supp. 1099, 1103 (D. Md. 1993) (defendant must establish "[d]irect control" by federal official).

Here, Defendants have not even provided a copy of the government contract, much less **any** evidence of "direct orders" by Federal officers, so there is nothing for the Court to review: the Court must accept as true that Defendants' conduct was wholly independent of government control, much less pursuant to a "direct order" or "detailed and comprehensive regulations."

17

## CONCLUSION

For the above reasons, Plaintiff respectfully requests this Court remand the above action to the Delaware Superior Court in and for New Castle County.

Respectfully submitted,

_Nelli Mullen Walsh_

Nelli Mullen Walsh (2707)
Ben T. Castle (520)
YOUNG CONAWAY STARGATT & TAYLOR, LLP
1000 West Street, 17th Floor
P.O. Box 391
Wilmington, DE 19899-0391
(302) 571-6618/6603
Attorneys for Plaintiffs

_Of Counsel:_
James E. Beasley, Jr.
Maxwell S. Kennerly
THE BEASLEY FIRM, LLC
1125 Walnut Street
Philadelphia, PA 19107-4997
(215) 592-1000

Dated:  March 20, 2008

18

067040.1001