## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF DELAWARE

CYNTHIA PARLIN, Individually, and in her          :
Capacities as Surviving Spouse of Samuel Parlin,  :
And As Executrix of the Estate of Samuel Parlin,  :
Deceased,                                          :    C. A. No. 1:08-107 JJF
                                                   :
    Plaintiffs,                                    :
                                                   :    Jury of 12 Demanded
    v.                                             :
                                                   :
DYNCORP INTERNATIONAL INC., *et al.*,              :
                                                   :
    Defendants.                                    :

## DEFENDANTS' REPLY TO PLAINTIFF'S OPPOSITION TO DEFENDANTS' MOTION TO DISMISS OR, IN THE ALTERNATIVE, MOTION TO TRANSFER VENUE

*Of Counsel*:                                Robert K. Beste, III (No. 3931)
Robert B. Wallace                            SMITH, KATZENSTEIN & FURLOW LLP
Kevin P. Farrell                             Post Office Box 410
Yoora Pak                                    Wilmington, Delaware 19899
WILSON, ELSER, MOSKOWITZ,                    (302) 652-8400
EDELMAN & DICKER LLP                         (302) 652-8405 (facsimile)
The Colorado Building                        rbeste@skfdelaware.com
1341 G Street, N.W., 5th Floor
Washington, DC 20005                         *Attorneys for Defendants,*
(202) 626-7660                               *DynCorp International Inc. and*
(202) 628-3606 (facsimile)                   *DynCorp International LLC*


March 27, 2008

# TABLE OF CONTENTS

Page

TABLE OF AUTHORITIES ................................................................. ii

ARGUMENT ................................................................................... 1

    I.    THIS CASE MUST BE DISMISSED FOR LACK OF
          SUBJECT MATTER JURISDICTION BECAUSE
          THE CLAIMS ARE NONJUSTICIABLE
          UNDER THE POLITICAL QUESTION DOCTRINE ......................................... 3

          A.    Plaintiff Has Failed To Establish That This Court
                   Has Subject Matter Jurisdiction Because She Has
                   Not Demonstrated That This Court Will Not Have
                   To Second-Guess The Initial Policy Determinations
                   Made By The U.S. Military And The U.S.
                   Department Of State And Intrude Into The
                   Constitutionally Committed Authority Of The
                   Political Branches To Determine Foreign Policy And
                   Miliary Matters In Resolving Her Claims. .................................................. 3

          B.    Plaintiff Has Failed To Establish That This Court
                   Has Subject Matter Jurisdiction Because She Has Not
                   Demonstrated That There Are Judicially Discoverable
                   And Manageable Standards To Resolve The Issues
                   Raised In The Complaint .......................................................... 9

    III.    DYNCORP IS A BORROWING EMPLOYER AND IS THUS
          IMMUNE FROM TORT LAWSUITS BASED UPON DEATH
          OCCURRING WHILE THE EMPLOYEE IS EMPLOYED
          ABROAD UNDER A GOVERNMENT CONTRACT ...................................... 11

    IV.    AS AN ALTERNATIVE TO DISMISSAL FOR IMPROPER
          VENUE, ALL FACTORS WEIGH IN FAVOR OF
          TRANSFERRING THIS CASE TO THE U.S. DISTRICT
          COURT FOR THE EASTERN DISTRICT OF VIRGINIA
          AS THE MOST APPROPRIATE VENUE FOR THIS LITIGATION ............... 14

CONCLUSION .......................................................................... 16

# TABLE OF AUTHORITIES

**Cases**                                                                    **Page(s)**

*Americans United for Separation of Church and State v. Reagan*,
    786 F.2d 194 (3d Cir. 1986) ............................................. 4

*Baker v. Carr*,
    369 U.S. 186, 217 (1962) ................................................. 3

*Beatty v. Republic of Iraq*,
    480 F. Supp. 2d 60 (D.D.C. 2007) ................................. 8

*Bell Atlantic Corp. v. Twombly*,
    127 S. Ct. 1955 (2007) ................................................... 3

*Billizon v. Conoco, Inc.*,
    993 F.2d 104 (5th Cir. 1993) ....................................... 12

*Brown v. Hansen*,
    973 F.2d 1118 (3d Cir. 1992) ........................................ 4

*Fisher v. Halliburton, Inc.*,
    454 F. Supp. 2d 637 (S.D. Tex. 2006 ........................... 8

*FS Photo, Inc. v. Picturevision, Inc.*,
    48 F. Supp. 2d 442 (D. Del. 1999) .............................. 14

*Gross v. German Found. Indus. Initiative*,
    456 F.3d 363 (3d Cir. 2006) ..................................... 4, 8

*Mortensen v. First Fed. Sav. and Loan*,
    549 F.2d 884 (3d Cir. 1977) .......................................... 3

*New Jersey v. United States*,
    91 F.3d 463 (3d Cir. 1996) ............................................ 4

*Peter v. Hess Oil V.I. Corp.*,
    903 F.2d 935 (3d Cir. 1990) .................................... 11-13

*Pfizer Inc. v. Ranbaxy Labs. Ltd*,
    525 F. Supp. 2d 680 (D. Del. 2007) .............................. 3

*Sarei v. Rio Tinto, PLC*,
    456 F.3d 1069 (9th Cir. 2006) ....................................... 8

*Smith v. Halliburton Co.*,
    2006 WL 2521326 (S.D. Tex. Aug. 30, 2006) ........................................... 5, 9

*Smith-Idol v. Halliburton*,
    2006 WL 2927685 (S.D. Tex. Oct. 11, 2006) ................................................ 8

*The Plum Tree, Inc. v. Stockment*,
    488 F.2d 754 (3d Cir. 1973) ......................................................................... 15

*West v. Kerr-McGee Corp.*,
    765 F.2d 526, (5th Cir. 1985) ....................................................................... 12

*Whitaker v. Kellogg Brown & Root, Inc.*,
    444 F. Supp. 2d 1277 (M.D. Ga. 2006) ..................................................... 5, 9

*White v. Bethlehem Steel Corp.*,
    222 F.3d 146 (4th Cir. 2000) ....................................................................... 11

*Woodson v. Halliburton*,
    2006 WL 2796228 (S.D. Tex. Sept. 28, 2006) .............................................. 9

## Authorities               Page(s)

28 U.S.C. § 1404(a) ............................................................................................ 15, 16

33 U.S.C. § 1651 ................................................................................................ 11, 12

Rule 12(b)(1) ................................................................................................ 3, 11, 16

Rule 12(b)(6) ..................................................................................................... 1, 2

Transparency and Accountability in Military and Security
Contracting Act of 2007, S. 674, 100th Cong., § 2(1) (2007) ................................ 10

Transparency and Accountability in Security Contracting
Act of 2007, H.R. 369, 100th Cong., § 3 (2007) ........................................ 10

## ARGUMENT

Defendants DynCorp International Inc. and DynCorp International LLC [hereinafter collectively referred to as "DynCorp" or "Defendants"] filed a two-part Motion to Dismiss [hereinafter cited as "Mot. at __"] demonstrating that this case should be dismissed and/or transferred on alternative grounds.

First, Defendants established that this case should be dismissed for lack of subject matter jurisdiction pursuant to Rule 12(b)(1) under the political question doctrine because the claims asserted by Mrs. Parlin are not justiciable.  To that end, Defendants showed that the facts of this case are inextricably intertwined with and driven by the policy determinations made by the Executive and Legislative Branches about the use of contractor employees as force multipliers in a war zone in Iraq.  Because many of the decisions concerning the presence of contractor employees in Iraq are made or directed by the military and foreign policy decisions by the Executive and Legislative Branches, including the type of police training missions, the type of approved protective gear, weapons, vehicles, and military control and direction of travel in and around Baghdad, judicial resolution of the claims in this case would require this Court to intrude into these executive and legislative-type determinations, which are constitutionally committed to the other two branches of government.  Mot. at 5-15.

In addition, DynCorp established that the claims asserted are not justiciable and that this case should therefore be dismissed for lack of subject matter jurisdiction because there are no judicially discoverable and manageable standards by which this Court could determine the adequate level of security and protection that should have been provided to Mr. Parlin or whether Mr. Parlin should have been traveling in Baghdad on the day of his death -- the key liability issues in this case.  Mot. at 15-20.

Second, if this Court were to determine that it had jurisdiction, DynCorp also demonstrated in the Motion to Dismiss that while Defendants are incorporated in Delaware, this case should be dismissed for improper venue in Delaware because none of the events underlying Mrs. Parlin's claims occurred in Delaware. As an alternative to dismissal, DynCorp requested that this case be transferred to the Eastern District of Virginia, Alexandria Division, where its principal place of business is located. To the extent any of the events relating to Mrs. Parlin's claims occurred in the United States, they occurred in Virginia, DynCorp's principal place of business, not Delaware. Mot. at 20-23. In addition, as shown in the Motion, the consideration of the private and public factors relevant to a transfer analysis weighed in favor of the transfer. Mot. at 23-27.

In her Opposition to the Motion to Dismiss [hereinafter referred to as "Opposition" and cited as "Opp. at __"], Mrs. Parlin fails to satisfy her burden of establishing that subject matter jurisdiction is proper in this case. Without any factual or legal support, Mrs. Parlin asserts that the political question doctrine does not apply in this case because this case does not involve any policy choices, that there is no negative impact on foreign relations, and that there are judicially manageable standards. *See* Opp. at 7-10, 14-16.

Moreover, Mrs. Parlin erroneously asserts in her Opposition that she is entitled to sue DynCorp as the general contractor who was not her husband's employer pursuant to the Defense Base Act. Opp. at 10-12. However, because Mr. Parlin was a "borrowed employee," DynCorp, as the borrowing employer, is entitled to claim the immunities available under the DBA. Thus, contrary to Mrs. Parlin's position, the DBA provides the exclusive remedy for her in his death and she is not entitled to sue Defendants.[1]

---

[1] Contrary to Mrs. Parlin's erroneous assumption, DynCorp did not raise this argument in its Motion to Dismiss because, at this stage of the litigation, it is cognizant of the standard of review that would be applicable to a Rule 12(b)(6) motion, during which the Court is required to confine its analysis to the

In summary, because Mrs. Parlin's claims are not justiciable under the political question doctrine, this Court does not have subject matter jurisdiction. Even if this Court had jurisdiction, this case should be dismissed for improper venue or, in the alternative, transferred to the Eastern District of Virginia.

## I.  THIS CASE MUST BE DISMISSED FOR LACK OF SUBJECT MATTER JURISDICTION BECAUSE THE CLAIMS ARE NONJUSTICIABLE UNDER THE POLITICAL QUESTION DOCTRINE

In the Motion to Dismiss,[2] DynCorp established that Mrs. Parlin's claims are nonjusticiable and that this Court does not have subject matter jurisdiction under the political question doctrine. *See* Mot. at 5-20. Specifically, of the six (6) factors that indicate the presence of a nonjusticiable political question articulated in *Baker v. Carr*, 369 U.S. 186, 217 (1962), three such factors can be found in this case -- (1) a textually demonstrable constitutional commitment of the issue to a coordinate political department (*see* Mot. at 10-15), (2) a lack of judicially discoverable and manageable standards for resolving it (*see* Mot. at 16-20), and (3) the impossibility of deciding without an initial policy determination of a kind clearly for nonjudicial discretion (*see* Mot. at 7-10).

---

allegations in the Complaint. As shown below, the borrowed servant doctrine relies on a number of facts that are not available at this stage of the litigation. DynCorp has not waived its right to assert this defense in the event that the Court determines it has subject matter jurisdiction and this litigation continues.

[2] As a threshold matter, the Opposition confuses the standards of review applicable to a Rule 12(b)(1) motion to dismiss for lack of subject matter jurisdiction and a Rule 12(b)(6) motion to dismiss for failure to state a claim. *See* Opp. at 5-6. The applicable standards are different, as the Court's subject matter jurisdiction has no relation to whether a plaintiff has properly pled a claim to avoid dismissal for failure to state a claim. *See Mortensen v. First Fed. Sav. and Loan*, 549 F.2d 884, 891 (3d Cir. 1977). The standard for reviewing Rule 12(b)(1) motions to dismiss for lack of subject matter jurisdiction has not been revised by *Bell Atlantic Corp. v. Twombly*, 127 S. Ct. 1955 (2007). *See Pfizer Inc. v. Ranbaxy Labs. Ltd*, 525 F. Supp. 2d 680, 684 (D. Del. 2007); Mot. at 4-5.

**A.**    **Plaintiff Has Failed To Establish That This Court Has Subject Matter Jurisdiction Because She Has Not Demonstrated That This Court Will Not Have To Second-Guess The Initial Policy Determinations Made By The U.S. Military And The U.S. Department Of State And Intrude Into The Constitutionally Committed Authority Of The Political Branches To Determine Foreign Policy And Miliary Matters In Resolving Her Claims.**

In her Opposition, Mrs. Parlin recites the Third Circuit's standard that a "discriminating inquiry into the precise facts and posture of the particular case" must be made in determining whether an issue is nonjusticiable. *See* Opp. at 6 (quoting and citing *Gross v. German Found. Indus. Initiative*, 456 F.3d 363, 377-378 (3d Cir. 2006)).[3]  However, instead of presenting the facts of this case so that this Court may conduct a "discriminating inquiry," Mrs. Parlin misconstrues DynCorp's arguments and makes conclusory remarks that do not establish subject matter jurisdiction.[4]

For instance, Mrs. Parlin claims that this case "does not involve any 'policy choices' by any branch of government; rather, the case revolves around dangerous and unreasonable conduct by a corporation while carrying out a government contract overseas. . . ." Opp. at 7.  In drawing such conclusions, Mrs. Parlin appears to make a number of assumptions that simply are not reasonable, especially because she has conceded the dangerous environment in which her

---

[3] Mrs. Parlin opines that there is a "paucity of precedent … across the United States" because DynCorp did not cite a decision issued by the Third Circuit Court of Appeals or a district court residing therein that dismissed claims as nonjusticiable pursuant to the political question doctrine.  To the contrary, the Third Circuit has indeed dismissed claims as nonjusticiable under the political question doctrine.  *See, e.g., New Jersey v. United States*, 91 F.3d 463, 469-470 (3d Cir. 1996) (affirming dismissal of plaintiffs' constitutional claims as nonjusticiable under the political question doctrine); *Brown v. Hansen*, 973 F.2d 1118, 1121-1122 (3d Cir. 1992) (affirming dismissal of complaint challenging internal regulations of the Virgin Islands Legislature as nonjusticiable because court could not resolve the dispute without "expressing lack of the respect due coordinate branches of government"); *Americans United for Separation of Church and State v. Reagan*, 786 F.2d 194, 201-202 (3d Cir. 1986) (affirming dismissal of complaint that sought to challenge the President's decision to extend diplomatic relations to the Vatican because the President's decision in that regard is a "judicially unreviewable political decision").

[4] Throughout her Opposition, Mrs. Parlin notes that DynCorp did not attach a copy of its CIVPOL contract to the Motion to Dismiss.  There is no requirement that DynCorp do so, especially because it was responding to plaintiff's allegations in the Complaint.

husband voluntarily agreed to work. *See* Complaint, ¶¶ 26, 27, & 29. To that end, her husband was killed when a roadside IED, set up by enemy combatants, exploded when he and his crew were driving in the "Red Zone" in Baghdad, a notoriously hostile area. *See* Complaint, ¶ 26. As demonstrated in the Motion to Dismiss, Mrs. Parlin's allegations disregard the small part being played by DynCorp as a CIVPOL contractor.

CIVPOL is a foreign policy tool. *See* Mot., Exhibit 1. The U.S. Department of State awarded a contract to DynCorp to recruit civilian law enforcement personnel for its CIVPOL mission in Iraq, which includes training the Iraqi Police Service in conjunction with the Government of Iraq and U.S. Central Command's Civilian Police Assistance Training Team ("CPATT") at a time when the U.S.-led coalition of military forces have been defending the citizens of Iraq and engaging in daily, hostile, and deadly combat. This interaction between the U.S. Government's foreign policy initiatives and U.S. military operations in Iraq underscores the difficulty of judicially reviewing the issues raised in this lawsuit. In other words, in evaluating and resolving issues regarding the adequacy of security measures provided to civilian contractors and acceptable travel conditions for civilian contractors in Iraq, the Court may have to assess the "wisdom of the [government's] strategic and tactical decisions" to use civilian contractors to carry out such a vital foreign policy, especially in countries that involve hostile military operations. *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F. Supp. 2d 1277, 1282 (M.D. Ga. 2006) (holding that such evaluation is a "classic political question over which this Court has no jurisdiction"). Because the State Department's contractual requirements set a minimum standard that provides no specific guidelines, the executive agency's approval of the contract terms illustrates that the issues in this case could not be resolved without undermining "an initial policy

determination of a kind clearly for nonjudicial discretion." *Smith v. Halliburton Co.*, 2006 WL 2521326, at *6 (S.D. Tex. Aug. 30, 2006). *See* Mot. at 5-15.

Instead of presenting any persuasive arguments that this Court has subject matter jurisdiction, Mrs. Parlin shifts the focus from her own burden by misconstruing DynCorp's argument. She argues that "to the extent Defendants truly believe this case encroaches upon any decision of the military or government, there is a separate judicially-created doctrine available: the government contractor defense." Opp. at 7.[5] She then asserts that the government contractor defense is not applicable because there is no allegation in the Complaint that there was any specific direction from the government. *See* Opp. at 12-14.

However, DynCorp's political question argument is a pure political question argument. As DynCorp argued in the Motion to Dismiss, Mrs. Parlin's claims are nonjusticiable because, in evaluating and resolving issues regarding the adequacy of security measures provided to civilian contractors and acceptable travel conditions for civilian contractors in Iraq, the Court may have to assess the "wisdom of the [government's] strategic and tactical decisions" ***to use civilian contractors to carry out a vital foreign policy, especially in countries that involve hostile military operations***. *See* Mot. at 5-15. In other words, judicial resolution of the issues raised in this case -- whether DynCorp provided adequate security and protective measures to Mr. Parlin and whether the conditions in or around Baghdad, Iraq allowed for travel -- will require this Court to consider the interplay between the U.S. government's foreign policy and military decisions. The U.S. government's decision to increase its use of contractors in unprecedented levels in military hostile regions such as Iraq has highlighted the void and created the need to

---

[5] Without any reference, Mrs. Parlin asserts that DynCorp did not raise the government contractor defense "because they know they cannot possibly meet its elements." Opp. at 7. DynCorp's litigation decisions do not indicate its consideration of the merits of any defense or argument.

establish standards for the adequacy of security and protection for the civilian force multipliers, like Mr. Parlin.

To diffuse the political question implications of the CIVPOL contracts, Mrs. Parlin asserts that "the sole act of the Executive here was to make Plaintiff-decedent's safety and security the responsibility of the Defendants." Opp. at 8-10. This is, in fact, a crucial consideration in this case. Can this Court judicially review and evaluate the level of security to be provided to civilian employees of a government contractor in Iraq without passing judgment on the Executive Branch's decision to hire civilian contractors to fulfill an important foreign policy initiative in countries strife with U.S.-led military combat activities and enemy combatants targeting U.S. affiliated contractors? How can the Court do this without interfering with U.S. government decisions about how civilian contractors should be regulated and supervised in Iraq? Contrary to Mrs. Parlin's attempt to isolate the events underlying her husband's death and to nullify the inherent risks of his employment in Iraq, one cannot ignore that the events giving rise to Mrs. Parlin's claims. The events occurred in a combat-ridden, violent country where, as Mrs. Parlin concedes, U.S. contractors may be targeted for attack merely by their affiliation with the U.S. government and military. *See* Complaint, ¶ 26. Unfortunately, no amount of protective gear may have prevented Mr. Parlin's death when a massive IED is detonated in his vicinity.

Despite the prominence of the government policies implicated by the government's decision to use civilian contractors to fulfill a foreign policy objection, Mrs. Parlin misrepresents DynCorp's arguments and asserts that "here there is **no** negative impact on foreign relations" because she, as an American citizen, is seeking a monetary payout from another U.S. citizen. Opp. at 9 (emphasis in original). DynCorp's political question argument, however, is not based

upon any foreign relations (as Mrs. Parlin misstates), but the U.S. government's foreign *policy* as embodied in the CIVPOL program. The U.S. government has decided to contract out a foreign policy initiative to private contractors, such as DynCorp, which then hires civilian employees, like Mr. Parlin, to carry out the United States' objectives.

Mrs. Parlin also asserts that foreign policy implications are absent because "the United States itself has **not** sought to dismiss or otherwise intervene in the case." Opp. at 9 (emphasis in original). However, the United States is not required to enter an appearance or issue a Statement of Interest in every case that implicates or discusses U.S. foreign policy. Because none of the parties nor this Court has asked the United States to submit a Statement of Interest in this case, there is no support of plaintiff's position that the absence of a Statement of Interest in this case means that there are no foreign policy implications in this case. *See* Opp. at 9. To that end, the cases cited by Mrs. Parlin are distinguishable. For instance, in *Beatty v. Republic of Iraq*, 480 F. Supp. 2d 60, 79-81 (D.D.C. 2007), the United States refused, after being asked, to submit a Statement of Interest taking a position on non-justiciability. *See also Gross*, 456 F.3d at 384-385 (noting that the United States "declined to express to the District Court or [the court of appeals] a position on the justiciability or merits of the 'interest' dispute"); *Sarei v. Rio Tinto, PLC*, 456 F.3d 1069, 1075-1076 (9th Cir. 2006) (noting that while the U.S. Department of State filed a Statement of Interest, it expressly declined to take a position on the political question and act of state issues).

The Opposition then asserts that "Defendants' own research reveals" that other district courts have "<u>never</u> dismissed a case on [the political question doctrine]." Opp. at 9 (emphasis in original). To the contrary, other district courts have relied upon the political question doctrine to dismiss cases brought by and/or involving civilian contractors in Iraq, as properly cited by

DynCorp in the Motion to Dismiss. *See Smith-Idol v. Halliburton*, 2006 WL 2927685 (S.D. Tex. Oct. 11, 2006) (dismissing complaint for lack of jurisdiction based on the political question doctrine in case involving the deaths and injuries suffered by contractors who were driving in a convoy in an area in Iraq known to be subject to enemy attacks and artillery fire); *Fisher v. Halliburton, Inc.*, 454 F. Supp. 2d 637 (S.D. Tex. 2006) (dismissing complaint for lack of jurisdiction based on the political question doctrine in case involving the deaths and injuries suffered by contractors who were driving in a convoy in an area of Iraq known to be subject to enemy attacks and artillery fire); *Woodson v. Halliburton*, 2006 WL 2796228 (S.D. Tex. Sept. 28, 2006) (dismissing complaint for lack of jurisdiction based on the political question doctrine after concluding that decisions about the adequacy of protection while traveling in Iraq "could not be divided into discrete parts attributable to the [contractors] and the Army"); *Smith v. Halliburton Co.*, 2006 WL 2521326 (S.D. Tex. Aug. 30, 2006) (dismissing complaint for lack of jurisdiction based on the political question doctrine in case involving death of contractor by a suicide bomb attack on a military based in Iraq); *Whitaker v. Kellogg Brown & Root, Inc.*, 444 F. Supp. 2d 1277 (M.D. Ga. 2006) (dismissing complaint for lack of jurisdiction based on the political question doctrine in case involving a soldier's death allegedly caused by acts of a government contractor's employee).

**B.** **Plaintiff Has Failed To Establish That This Court Has Subject Matter Jurisdiction Because She Has Not Demonstrated That There Are Judicially Discoverable And Manageable Standards To Resolve The Issues Raised In The Complaint**

As demonstrated in the Motion to Dismiss, there is no source for this Court to reference to evaluate and determine the amount of protection that Mr. Parlin should have been provided in Iraq and when Mr. Parlin should have been allowed to travel in Iraq. *See* Mot. at 16-20. These types of decisions are best left to the discretion of the Executive and Legislative branches, which

have recently adopted and introduced measures to provide manageable standards. *See* Mot. at 18-20. For instance, the "Memorandum of Agreement (MOA) between the Department of Defense and the Department of State on USG Private Security Contractors" (*see* Mot., Exhibit 2) demonstrates the Executive Branch's intent to develop federal laws and promulgate federal regulations addressing some or all of the issues raised in this Complaints, including unity of effort, rules for the use of force, authority to process and carry firearms, movement coordination and control, serious incident response and investigation, contract management and language, and legal accountability (under U.S. law). *See* Mot., Exhibit 2, Annex A. The MOA further provides that the executive agencies will coordinate agency oversight and deployment of private security contractors, and have agreed to "jointly develop, implement, and follow core standards, policies, and procedures for the accountability, oversight, and discipline of [private security contractors]." *See* Mot., Exhibit 2 at 1.

In addition, members of Congress have introduced and are working on bills that would establish federal standards regarding the amount of protection to be required for contractors. *See* Transparency and Accountability in Military and Security Contracting Act of 2007, S. 674, 100th Cong., § 2(1) (2007); Transparency and Accountability in Security Contracting Act of 2007, H.R. 369, 100th Cong., § 3 (2007).

In summary, DynCorp cannot provide an absolute guarantee against any injury or death when injury or death is an inherent risk in the employment. This is true especially when the employment involves deployment to a deadly environment such as Iraq, a known risk at the time that Mr. Parlin applied for and was hired for the position, as Mrs. Parlin concedes. *See* Complaint, ¶ 26. Because there are no standards at this time to provide the Court with any guidance on the level of protection that Mrs. Parlin claims should have been provided or when

he should have been allowed to travel, this lack of judicially manageable and discoverable standards highlights the difficulty, if not impossibility, of this Court's task to determine whether Mr. Parlin was provided with adequate security and protection when traveling in Baghdad.

For all of the foregoing reasons and for the reasons set forth in the Motion to Dismiss, DynCorp respectfully submits that the claims raised by Mrs. Parlin in her Complaint are nonjusticiable under the political question doctrine and that this case should be dismissed in its entirety pursuant to Rule 12(b)(1) of the Federal Rules for lack of subject matter jurisdiction.

## III.    DYNCORP IS A BORROWING EMPLOYER AND IS THUS IMMUNE FROM TORT LAWSUITS BASED UPON DEATH OCCURRING WHILE THE EMPLOYEE IS EMPLOYED ABROAD UNDER A GOVERNMENT CONTRACT

In her Opposition, Mrs. Parlin claims that she is entitled to sue DynCorp as a third party under the Defense Base Act ("DBA"). *See* Opp. at 10-12. While Defendants did not raise this argument in its Motion to Dismiss, Mrs. Parlin has raised it as a basis for jurisdiction to avoid dismissal. *See id*. To the extent that she is seeking to establish subject matter jurisdiction under the DBA, she cannot because Mr. Parlin was a "borrowed employee" and thus DynCorp, as the "borrowing employer," is immune from tort suits, such as this case.

The DBA, 33 U.S.C. § 1651, extends the provisions of the Longshore Harbor Worker's Compensation Act ("LHWCA") to individuals who are injured or killed while working under a U.S. government contract abroad. *See* 33 U.S.C. § 1651(a). In most cases, the DBA's exclusive remedy provision, like the LHWCA's provision, is only applicable to the injured employee's direct employer. *See* 33 U.S.C. § 1651(c). However, in interpreting and applying the exclusive remedy provision of the LHWCA, courts, including the Third Circuit Court of Appeals, have recognized the "borrowed employee" theory to apply that exclusive remedy provision to entities other than the direct employer in certain circumstances. *Peter v. Hess Oil V.I. Corp.*, 903 F.2d 935, 938-943 (3d Cir. 1990). Thus, under the "borrowed employee" doctrine, a "borrowing

employer" is immune from tort actions arising from injuries covered by the LHWCA. *See id.* at 953; *see also White v. Bethlehem Steel Corp.*, 222 F.3d 146 (4th Cir. 2000) (holding that as the borrowed servant, plaintiff's exclusive remedy was the Longshore Harbor Worker's Compensation Act and dismissing tort action against the borrowing employer); *Billizon v. Conoco, Inc.*, 993 F.2d 104 (5th Cir. 1993) (holding same). Because the DBA extends the provisions of the LHWCA's provision to contractors who are injured or killed while working on government contracts abroad, it is natural and reasonable to allow the "borrowed employee" doctrine to be applied in matters involving the DBA.

In applying the "borrowed employee" doctrine, the Third Circuit Court of Appeals focuses on two essential factors: (1) whether the borrowing employer was responsible for the borrowed employee's working conditions, and (2) whether the employment was of such duration that the borrowed employee could be presumed to have acquiesced in the risks of his employment.[6] *Peter*, 903 F.2d at 942 & n.7. In *Peter*, the plaintiff was directly employed by Litwin Panamerican Corporation ("Litwin"). Litwin and Hess Oil had a contractual arrangement by which Litwin provided personnel to Hess Oil at Hess' refinery. Of the two categories of employees provided by Litwin to Hess, the plaintiff was a "Type I" employee who was furnished

---

[6]

Other relevant factors in the "borrowed employee" analysis include:

1. Who has control over the employee and his work?
2. Whose work is being performed?
3. Was there an agreement between the original and the borrowing employer?
4. Did the employee acquiesce in the new work situation?
5. Did the original employer terminate his relationship with the employee?
6. Who furnished the tools and place for performance?
7. Was the new employment over a considerable length of time?
8. Who had the right to discharge the employee?
9. Who had the obligation to pay the employee?

*Peter*, 903 F. 2d at 942, n.7 (quoting *West v. Kerr-McGee Corp.*, 765 F.2d 526, (5th Cir. 1985). A single factor is not determinative, but the courts will weigh some factors more heavily than the others.

to work under Hess' exclusive control and direction and for whose workmanship Litwin was not responsible. To that end, Hess Oil controlled the plaintiff's working conditions, directed and controlled the plaintiff's work, and provided the plaintiff with safety equipment and a safe working environment. The plaintiff worked on Hess' refinery from November 1984 through August 1985, at which time he was injured while performing the work of Hess. The plaintiff had acquiesced to working for Hess and Hess, via Litwin, paid his salary and LHWCA coverage. *Id.* at 942. Each of the elements set forth above in the <u>Peter</u> case are present in this case.

By her own allegations, Mrs. Parlin concedes that Mr. Parlin acquiesced to the risks of his employment (indeed, he was seeking to extend his employment in Iraq after completing 2 years of employment, *see* Complaint, ¶¶ 1, 29) and that DynCorp was responsible for Mr. Parlin's working conditions, including safety. *See* Complaint, *passim.* For instance, she alleges that DynCorp supplied Mr. Parlin with "inadequate resources and personnel," including allegedly obsolete, old, illegal, or "otherwise dangerous weapons." Complaint, ¶ 23. DynCorp is also alleged to have "maintained a culture of indifference to the security of IPLOs and other individuals" and "frequently under-equipped and under-manned the 'SHARK' teams charged with travel security." Complaint, ¶¶ 24-25. Further, it is alleged that "Defendants routinely failed to evaluate thoroughly the risk/benefit of proposed travel throughout Iraq," and that "Defendants routinely ordered travel even when wholly unrelated to mission success." Complaint, ¶¶ 26-27.

Because the allegations in the Complaint illustrate Mr. Parlin's acquiescence and DynCorp's control over his working environment, DynCorp, as the borrowing employer, is immune from any tort liability.[7]

**IV.    AS AN ALTERNATIVE TO DISMISSAL FOR IMPROPER VENUE, ALL FACTORS WEIGH IN FAVOR OF TRANSFERRING THIS CASE TO THE U.S. DISTRICT COURT FOR THE EASTERN DISTRICT OF VIRGINIA AS THE MOST APPROPRIATE VENUE FOR THIS LITIGATION**

Mrs. Parlin asserts that she brought this lawsuit in "the only forum in which jurisdiction and venue were **certain** over the Defendants, all of whom are incorporated in Delaware." Opp. at 17 (emphasis in original). Her assertion is not correct, as proper venue also exists in the Eastern District of Virginia, Defendants' principal place of business. Thus, the issue before this Court is whether this matter should be litigated in Delaware or in Virginia. If the Court determines that venue is proper in Delaware, no further discussion is warranted. On the other hand, if the Court determines that venue is not proper in Delaware, it must decide whether to dismiss this action for improper venue (*see* Mot. at 20-23) or transfer this case to a more appropriate venue (*see* Mot. at 23-27).

As set forth in the Motion to Dismiss, the test for proper venue focuses on the location of the events or omissions giving rise to the claims. *See* Mot. at 20-23. This test and existing case law point to Virginia, not Delaware, as the more appropriate venue for this matter because, to the extent that any acts occurred in the United States, they occurred in Defendants' principal place of business. *See FS Photo, Inc. v. Picturevision, Inc.*, 48 F. Supp. 2d 442, 449-450 (D. Del. 1999) (transferring case to Eastern District of Virginia even though defendant was Delaware corporation because the actions occurred in Virginia). To that end, while we know that the

---

[7] In the event that the Court determines that there is insufficient information in the pleadings at this time to evaluate the "borrowed employee" doctrine, DynCorp reserves the right to raise this defense in any further motion or proceeding in this case following discovery or as the Court may order limited discovery on this issue.

events underlying Mr. Parlin's death occurred in Iraq, the allegations in the Complaint establish by reasonable inference that DynCorp's acts with respect to bidding, executing, and negotiating the CIVPOL contract occurred in the United States and that such acts must have occurred in Virginia, DynCorp's principal place of business, and not in Delaware, where DynCorp does not maintain a business presence. *See* Complaint , ¶¶ 21 (alleging that DynCorp presented cost proposals to the U.S. Department of State "for security purchases and personnel below what they knew or should have known would be required for adequate security"); ¶22 (alleging that "such misrepresentation regarding security purchases and personnel was intentionally made to induce the [U.S.] Department of State to award defendants DYNCORP, DI LLC, and DOES the CIVPOL contracts. . . .").[8]

In addition, in weighing the private, public, and judicial interest factors, Mrs. Parlin has no basis for claiming any prejudice if this case is transferred to Virginia because she does not reside in Delaware. *See* Complaint, ¶ 2 (alleging residence in Georgia).  That Mrs. Parlin has decided to retain counsel "in and near Delaware" (Opp. at 19) is not a factor in this analysis. The Third Circuit Court of Appeals has already held that convenience to counsel is not a factor to be considered for venue purposes. *The Plum Tree, Inc. v. Stockment,* 488 F.2d 754, 1047 (3d Cir. 1973).

In summary, DynCorp respectfully submits that all factors weigh in favor of transferring this case to the U.S. District Court for the Eastern District of Virginia.  See Mot. at 23-27. Consequently, DynCorp requests that this Court exercise its discretion pursuant to 28 U.S.C. § 1404(a) and transfer this case to the Eastern District of Virginia, Alexandria Division.

---

[8] In the event that this Court is unable to draw these inferences from the allegations in the Complaint, it may be appropriate to allow the parties to engage in very limited discovery to develop the record regarding the judicial district in which any of the acts or omissions relating to the claims in this case occurred in the United States.

## <u>CONCLUSION</u>

For the foregoing reasons and for the reasons stated in the Motion to Dismiss, DynCorp respectfully requests that this case be dismissed in its entirety for lack of subject matter jurisdiction under Rule 12(b)(1).  In the alternative, DynCorp respectfully submits that this case should be dismissed in its entirety for improper venue under Rule 12(b)(3), or, in the alternative, that this case should be transferred to the Eastern District of Virginia pursuant to 28 U.S.C. § 1404(a).

*Of Counsel*:                                          SMITH, KATZENSTEIN & FURLOW LLP
Robert B. Wallace
Kevin P. Farrell
Yoora Pak                                                  ___*/s/ Robert K. Beste*_____
WILSON, ELSER, MOSKOWITZ,        Robert K. Beste, III (No. 3931)
EDELMAN & DICKER LLP                  Post Office Box 410
The Colorado Building                        Wilmington, Delaware 19899
1341 G Street, N.W., 5th Floor            (302) 652-8400
Washington, DC 20005                        (302) 652-8405 (facsimile)
(202) 626-7660                                      rkb@skfdelaware.com
(202) 628-3606 (facsimile)

                                                              *Attorneys for Defendants*
                                                              *DynCorp International Inc. and*
                                                              *DynCorp International LLC*