IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF DELAWARE

| | |
|---|---|
| CYNTHIA PARLIN, Individually, and in her Capacities as Surviving Spouse of Samuel Parlin, And As Executrix of the Estate of Samuel Parlin, Deceased, | : : : : : : : |
| Plaintiff, | : : |
| v. | CIVIL ACTION NO. 08-107 JJF : : TRIAL BY JURY DEMANDED |
| DYNCORP INTERNATIONAL, INC., et al., | : : : |
| Defendants. | : |

James E. Beasley, Jr., Esquire & Maxwell S. Kennerly, Esquire of THE BEASLEY FIRM, LLC of Philadelphia, PA.
Neilli Mullen Walsh, Esquire & Ben T. Castle, Esquire of YOUNG CONAWAY STARGATT & TAYLOR, LLP of Wilmington, DE.

Counsel for Plaintiff.

Robert B. Wallace, Esquire; Kevin P. Farrell, Esquire; and Yoora Pak, Esquire of WILSON, ELSER, MOSKOWITZ, EDELMAN & DICKER LLP of Washington, DC.
Robert K. Beste, III, Esquire of SMITH, KATZENSTEIN & FURLOW LLP of Wilmington, DE.

Counsel for Defendants.

**MEMORANDUM OPINION**

September 30, 2008
Wilmington, Delaware

*Joseph J. Farnan Jr.*
Farnan, District Judge

Pending before the Court are Plaintiff's Motion to Remand (D.I. 9) and Defendants' Motion to Dismiss (D.I. 3). For the reasons discussed below, the Court will grant Plaintiff's motion and deny Defendants' motion as moot.

### I. Background

On January 16, 2008, Plaintiff Cynthia Parlin, individually and in her capacities as surviving spouse of Samuel Parlin and Executrix of the Estate of Samuel Parlin, filed this action in the Superior Court of New Castle County, Delaware, alleging survival and wrongful death claims against Defendants DynCorp International Inc., DynCorp International LLC, and "Doe Entities 1-10" (collectively, "DynCorp" or "Defendants"). On February 19, 2008, Defendants removed the action to this Court, asserting federal question jurisdiction and jurisdiction under the federal officer removal statute, 28 U.S.C. § 1442(a)(1).

In her complaint, Plaintiff alleges the following facts. Plaintiff's spouse, Samuel Parlin, was a civilian police officer killed by an improvised explosive device ("IED") on or about January 16, 2006, while traveling through Baghdad, Iraq, at the behest of Defendants, to interview for a position that Defendants knew had already been filled. (D.I. 1, Exh. A at ¶1.) At the time of his death, Mr. Parlin was serving as an International Police Liaison Officer ("IPLO") at the Baghdad International

1

Airport and the Baghdad Police Academy in support of the United States Department of State Civilian Police ("CIVPOL") mission in Iraq. (Id. at ¶1.)  Mr. Parlin was employed by non-party DynCorp International FZ-LLC ("FZ-LLC Dubai"), with whom Defendants subcontracted to hire personnel and provide services in support of the CIVPOL contract. (Id. at ¶¶8, 9.)  Defendants contracted with the U.S. Department of State to provide services, including the recruitment, selection, equipping, and deployment of civilian police officers, in support of the CIVPOL mission to train an indigenous police force (the "CIVPOL contract"). (Id. at ¶6.)

The CIVPOL contract included provisions describing Defendants' responsibility to ensure the safety and security of both their employees and their subcontractor's employees. (Id. at ¶¶14-16.)  In negotiating the CIVPOL contract, Defendants "represented to the Department of State a cost for security purchases and personnel below what they knew or should have known would be required for adequate security," and this misrepresentation was "intentionally made . . . on defendants' mistaken belief the [Defense Base Act] would shield them and their subcontractor from liability for any harm which resulted."[1]

---

[1]   With respect to the Defense Base Act ("DBA") and the Longshore and Harbor Workers' Compensation Act ("LHWCA"), Plaintiff makes the following factual allegations and legal contentions:

> 10. Pursuant to 42 U.S.C. § 1651(a)(4) of the Defense Base Act ("DBA"), which applies 33 U.S.C. § 904(a) of the Longshore and Harbor Workers' Compensation Act ("LHWCA") to

(Id. at ¶¶21,22.)

Defendants routinely supplied IPLOs, including Mr. Parlin, with inadequate resources, such as obsolete or otherwise dangerous weapons like AK-47s obtained locally with no provision made to ensure their working order. (Id. at ¶23.) Defendants also maintained a "culture of indifference" to the security of ILPOs, as evidenced by Defendants' managers routinely ordering their subordinates to travel unnecessarily through Baghdad to run errands for management. (Id. at ¶24.)

Mr. Parlin, whose employment was to end on February 28, 2006, was directed by Defendants to travel from the Baghdad International Airport to the Baghdad Hotel for an employment interview, even though Defendants had already filled the position for which Mr. Parlin was scheduled to interview. (Id. at ¶¶29, 31, 35.) Despite their awareness of the extreme danger of travel through Baghdad, Defendants "chose to conduct in-person

---

> any employment under a contract (or subcontract with respect to such contract) entered into by the United States for engaging in public works abroad, subcontractor employer FZ-LLC Dubai secured DBA coverage for its employee, Samuel Parlin.
>
> 11. Pursuant to 33 U.S.C. § 905(a) of the LHWCA, because subcontractor employer FZ-LLC Dubai did not fail to secure DBA coverage, general contractor defendants DYNCORP, DI LLC, and DOES cannot be deemed the employers of Samuel Parlin. Thus, pursuant to 33 U.S.C. § 904(a), defendants DYNCORP, DI LLC, and DOES have none of the immunities of an employer under the DBA or LHWCA.

(Id. at ¶¶10-11.)

3

interviews, and chose to order Samuel Parlin to travel to the Baghdad Hotel, to create the appearance of a competitive selection process." (Id. at ¶37.) Mr. Parlin died on January 16, 2006, as a result of injuries sustained from an IED while traveling to his interview at the Baghdad Hotel. (Id. at ¶38.)

## II. Discussion

The party seeking removal has the burden of establishing federal jurisdiction. Boyer v. Snap-on Tools Corp., 913 F.2d 108, 111 (3d Cir. 1990)(citations omitted). As a lack of jurisdiction would render a court's judgment void, "the removal statute should be strictly construed and all doubts should be resolved in favor of remand." Abels v. State Farm Fire & Cas. Co., 770 F.2d 26, 29 (3d Cir. 1985)(citations omitted). In deciding a motion to remand, "the district court must focus on the plaintiff's complaint at the time the petition for removal was filed," and "must assume as true all factual allegations of the complaint." Steel Valley Auth. v. Union Switch & Signal Div., 809 F.2d 1006, 1010 (3d Cir. 1987)(citations omitted).

Defendants contend that removal of this action was proper because the Court has both (1) federal question jurisdiction based on unique and significant federal interests and (2) jurisdiction pursuant to the federal officer removal statute, 28 U.S.C. § 1442(a)(1). The Court will address these arguments in turn.

4

   A. <u>Federal Question Jurisdiction</u>

 A defendant is entitled to remove a state court action if it could have been brought in federal district court originally, 28 U.S.C. § 1441, as a "civil action[] arising under the Constitution, laws, or treaties of the United States," 28 U.S.C. § 1331.

 Federal question jurisdiction is usually invoked in cases involving a federal cause of action, but as the Supreme Court recently emphasized, it can also be invoked in those rare instances where a "state-law claim necessarily raise[s] a stated federal issue, actually disputed and substantial, which a federal forum may entertain without disturbing any congressionally approved balance of federal and state judicial responsibilities." <u>Grable & Sons Metal Prods., Inc. v. Darue Eng'g & Mfg.</u>, 545 U.S. 308, 314 (2005). <u>Grable</u> involved a state quiet title action concerning a property that had been seized by the Internal Revenue Service and then sold to the defendant, in which the plaintiff premised his superior title claim on a failure by the IRS to give adequate notice of the seizure, as required by federal law. <u>Id.</u> at 314-15. In <u>Grable</u>, the Supreme Court held that the meaning of the federal statute was "an essential element" of the quiet title claim, and indeed appeared to be "the only legal or factual issue contested." <u>Id.</u> The Supreme Court further ruled that given the Government's interest in the

collection of delinquent taxes, the Government has a "direct interest in the availability of a federal forum" to vindicate its action, and that in light of the rarity of quiet title claims turning on disputed questions of federal law, allowing federal jurisdiction "will portend only a microscopic effect on the federal-state division of labor."  Id.

Insofar as it focuses on the essential elements of a plaintiff's claim, the embedded federal issue analysis articulated by the Supreme Court in Grable does not depart from the long standing "well-pleaded complaint" rule.  The "well-pleaded complaint" rule construes statutory "arising under" jurisdiction to exclude cases in which a federal question is inherent in a potential defense rather than in the plaintiff's cause of action.  Louisville & Nashville R. Co. v. Mottley, 211 U.S. 149, 152 (1908)("It is not enough that the plaintiff alleges some anticipated defense to his cause of action, and asserts that the defense is invalidated by some provision of the Constitution of the United States."); see also Franchise Tax Bd. of Cal. v. Construction Laborers Vacation Trust for Southern Cal., 463 U.S. 1, 9-11 (1983).  Insofar as it looks beyond the face of a plaintiff's pleading to whether the complaint implicates a significant federal issue, though, the Grable embedded federal issue analysis does depart from the "well-pleaded complaint" rule.  See Grable, 545 U.S. at 312.  Nevertheless, the focus of

6

the Grable analysis, like that of the "well-pleaded complaint" rule, remains on the plaintiff's cause of action, and whether it implicates significant federal issues. See id. at 314-15.

In response to Plaintiff's motion, Defendants contend inter alia that removal of this action based on federal question jurisdiction was proper because Plaintiff's state law claims implicate significant and unique federal interests. Citing Grable, Defendants contend that the question of their immunity from tort liability as a "borrowed employer" under the exclusivity of remedies provision of the Defense Base Act, 42 U.S.C. § 1651 et seq., "goes to the very heart of Plaintiffs' ability to bring their lawsuit." (D.I. 13 at 7.) Further, Defendants contend that this substantial federal issue is actually in dispute and that the Court's exercise of jurisdiction would not upset the balance of federal and state responsibilities.

Plaintiff contends that the question of Defendants' immunity under the DBA is merely a defense to Plaintiff's state law claims, and as such cannot form the basis for federal question jurisdiction. Further, Plaintiff contends that though she anticipated and responded to the DBA immunity defense in her complaint, it is still merely a defense, and not an essential element of her survival and wrongful death actions.

7

After reviewing the parties' contentions, the Court concludes it lacks federal "arising under" jurisdiction because the federal interest implicated in this matter arises out of a defense, and is not an essential element of Plaintiff's claims. The question of whether Defendants are immune from tort liability under the DBA may raise a disputed question of federal law; however, Defendants' potential immunity under the DBA only arises as a defense to Plaintiff's state law tort claims. It cannot be said to constitute an "essential element" of Plaintiff's survival and wrongful death actions. See Del. Code Ann. tit. 10 §§ 3722, 3724. Plaintiff does discuss the question of immunity under the DBA in her complaint, but only to respond to Defendants' anticipated defense. (See D.I. 1, Exh. A at ¶¶10-11.) This is distinguishable from the conceptual framework in Grable, where the Supreme Court reasoned that because Michigan quiet title law required the plaintiff to specify the facts establishing superiority of its claim, which was the alleged defect in notice under federal law, "whether Grable was given notice within the meaning of the federal statute [was] thus an essential element of its quiet title claim." Grable, 545 U.S. at 315. Thus, Defendants' reliance on Grable is misplaced, and the Court has no occasion to reach the embedded federal issue analysis articulated in Grable. Accordingly, the Court concludes that removal based on federal question jurisdiction, pursuant to 28 U.S.C. § 1441,

8

was improper.

        B.    <u>Federal Officer Removal Statute</u>

As a separate basis for jurisdiction, Defendants contend that removal of this action was proper under the federal officer removal statute. The federal officer removal statute allows a defendant to remove to federal court a state-court action brought against the "United States or any agency thereof or any officer (<u>or any person acting under that officer</u>) of the United States or of any agency thereof, sued in an official or individual capacity for any act under color of such office ...." 28 U.S.C. § 1442(a)(1) (emphasis added).

Unlike section 1441, which is strictly construed, <u>Abels</u>, 770 F.2d at 29, section 1442(a) is "liberally construed to give full effect to the purposes for which [it was] enacted," <u>Colorado v. Symes</u>, 286 U.S. 510, 517 (1932). The basic purpose of section 1442(a) is to protect the Federal Government from the interference with its operations that would ensue if a state was able to arrest and try in state court for alleged offenses under state law, federal officers and agents acting within the scope their authority. <u>Watson v. Philip Morris Companies, Inc.</u>, 127 S. Ct. 2301, 2306 (2007)(citations omitted). Section 1442(a) thus seeks to protect federal officials from state-court proceedings that may reflect local prejudice against unpopular federal laws or federal officials. <u>Id.</u>

9

To establish removal jurisdiction under section 1442(a)(1), a defendant must establish that "(1) it is a 'person' within the meaning of the statute; (2) the plaintiff's claims are based upon the defendant's conduct 'acting under' a federal office; (3) it raises a colorable federal defense; and (4) there is a causal nexus between the claims and the conduct performed under color of a federal office." Feidt v. Owens Corning Fiberglas Corp., 153 F.3d 124, 127 (3d Cir. 1998)(citing Mesa v. California, 489 U.S. 121, 129 (1989); Willingham v. Morgan, 395 U.S. 402, 409 (1969)).[2] By her motion, Plaintiff contends that Defendants have failed to satisfy the second and forth criteria articulated in Feidt.

        (i)   "Acting Under" & Causal Nexus for Purposes of 28 U.S.C. § 1442(a)(1)

While the Third Circuit has articulated the "acting under" a federal office requirement as distinct from the need for a causal connection between the conduct at issue and the federal direction, Feidt, 153 F.3d at 127, these questions "tend to collapse into a single requirement: that 'the acts that form the basis for the state civil or criminal suit were performed pursuant to an officer's direct orders or to comprehensive and detailed regulations,'" Reg'l Med. Transp., Inc. v. Highmark, Inc., 541 F. Supp. 2d 718, 724 (E.D. Pa. 2008)(quoting In re

---

[2]As a "pure jurisdictional statute" that conditions removal on a federal defense, section 1442(a) creates an exception to the "well-pleaded complaint" rule. Mesa, 489 U.S. at 136.

10

Methyl Tertiary Butyl Ether Prod. Liability Litig., 488 F.3d 112, 124 (2d Cir. 2007)("MTBE")(quoting Ryan v. Dow Chem. Co., 781 F.Supp. 934, 946 (E.D.N.Y. 1992))); accord Good v. Armstrong World Inds., Inc., 914 F.Supp. 1125, 1128 (E.D. Pa. 1996). In Highmark, the Court ruled that the defendant, a private Medicare contractor, was "acting under" a federal officer for purposes of section 1442(a)(1) after considering "defendants' role in administering the Medicare program and the complexity of the federal regulations under which they operated," which had been codified in 42 CFR § 405.372(c). 541 F. Supp. 2d at 724. The Court in Highmark then reasoned that, because the basis of plaintiff's suit was defendant's alleged misapplication of Medicare's complex rules and regulations, there was a causal nexus between the claims and the conduct performed under color of a federal office. Id.

(ii) Parties' Contentions & Analysis

By her motion, Plaintiff focuses on the second and fourth criteria articulated in Feidt, and contends that Defendants have provided no evidence that they were acting pursuant to specific government direction. Further, Plaintiff contends that merely acting under the general auspices of a federal contract is insufficient to satisfy the requirements of the federal officer removal statute, and that removal requires the acts forming the basis of the state suit to have been performed pursuant to an

11

officer's direct orders or to comprehensive and detailed regulations.

In response, Defendants contend that they have properly pled the four criteria set out in Feidt. In support of their contention that DynCorp was acting under a federal officer in Iraq, the second Feidt prong, Defendants request that the Court take judicial notice of the U.S. Department of State's public pronouncement regarding the CIVPOL program, as posted on the Department's website, which states that the Department "contracts with private companies who implement requirements provided by the Department of State to recruit, select, equip, and deploy" law enforcement officers. (D.I. 13, Exh. 2 at 3.) With respect to the fourth Feidt criterion, Defendants contend that they need only make an adequate threshold showing that the suit is for an act under color of federal office, and that Defendants "were implementing and administering the United States' CIVPOL mission in Iraq" when Mr. Parlin sustained his injuries.

After reviewing the parties' contentions, the Court concludes that Defendants have not established that the acts forming the basis of Plaintiff's action – alleged tortious conduct regarding the safety and security of IPLOs generally and the circumstances of Mr. Parlin's order to interview in particular – were taken pursuant to a federal officer's direct orders or to comprehensive and detailed regulations. At most,

Defendants have shown that they were acting under the general auspices of the Department of State, which is insufficient to satisfy the "acting under" component of § 1442(a)(1). See MTBE, 488 F.3d at 124; Highmark, 541 F. Supp. 2d at 724. While Plaintiff alleges that the CIVPOL contract included general provisions regarding the safety and security of Defendants' and their subcontractor's employees (D.I. 1, Exh. A at ¶¶14-16.), nothing before the Court indicates that Defendants were acting under comprehensive and detailed federal regulations or a federal officer's direct orders. The circumstances before the Court are thus distinguishable from those in Highmark, where the court found the "acting under" component of section 1442(a) satisfied where a Medicare contractor was governed by complex and codified federal regulations. See Highmark, 541 F. Supp. 2d at 724; see also Winters v. Diamond Shamrock Chemical Co., 149 F.3d 387, 399 (5th Cir. 1998)("We are convinced that the government's detailed specifications concerning the make-up, packaging, and delivery of Agent Orange, the compulsion to provide the product to the government's specifications, and the on-going supervision the government exercised over the formulation, packaging, and delivery of Agent Orange is all quite sufficient to demonstrate that the defendants acted pursuant to federal direction").

    Absent evidence that the measures taken by Defendants to ensure the safety and security of IPLOs were performed pursuant

13

to a federal officer's direct orders or to comprehensive regulations, the Court concludes that Defendants have failed to satisfy the requirements for removal under section 1442(a)(1) and that removal on this basis was improper.[3]  Accordingly, the Court will grant Plaintiff's Motion to Remand, pursuant to 28 U.S.C. § 1447(c).

### III. Conclusion

For the reasons discussed, the Court will grant Plaintiff's Motion to Remand (D.I. 9) and deny as moot Defendants' Motion to Dismiss (D.I. 3).

An appropriate order will be entered.

---

[3]The Court will not address the remaining Feidt criteria, which are now moot.

14